[No. 83357-5.   En Banc.]
Argued September 23, 2010.    Decided August 25, 2011.

THE STATE OF WASHINGTON, *Respondent*, v. KENNETH JOHN THORGERSON, *Petitioner*.

440

*Lenell R. Nussbaum,* for petitioner.

*Mark K. Roe, Prosecuting Attorney,* and *Seth A. Fine* and *Thomas M. Curtis, Deputies,* for respondent.

¶1 MADSEN, C.J. — A jury convicted Kenneth Thorgerson on four counts of child molestation. He contends that his convictions must be reversed because prosecutorial misconduct occurred during his trial. We agree with the Court of Appeals that some of the conduct he challenges was not misconduct and that the misconduct that did occur does not

constitute reversible error. Accordingly, we affirm the Court of Appeals.

## FACTS

¶2 When D.T. was about six or seven years old, her stepfather, defendant Kenneth Thorgerson, began trying to place her hand on his penis. She testified at trial that initially Thorgerson made her touch him over clothing, but about the time that she started fourth grade Thorgerson successfully forced her to touch him directly. Then, after two years during which Thorgerson persisted in trying to get D.T. to touch him, when she was in sixth grade she "gave him a hand job until he ejaculated" because she was "sick" of his attempts to force her to touch him and thought if she did this he would leave her alone. 2 Verbatim Report of Proceedings (VRP) (May 20, 2008) at 27. When D.T. was in the seventh grade, she refused Thorgerson's persistent attempts to force her to touch him sexually and threatened to tell her mother. She was not forced to touch him again.

¶3 D.T. did not tell anyone about Thorgerson's abuse until she was 17 years old. Then she told her high school boyfriend. She also told her brother and her best friend, and eventually she confided in Lisa Carson, her high school counselor. Ms. Carson contacted the police and Washington State Department of Social and Health Services, Child Protective Services.

¶4 Thorgerson denied any improper contact with D.T. He said that D.T. and her boyfriend had fabricated the story in order to avoid Thorgerson's strict rules and spend more time together.

¶5 The State charged Thorgerson with three counts of first degree child molestation and one count of second degree child molestation. At the trial, the State's evidence consisted of D.T.'s testimony and the testimony of people

that she made statements to about the abuse. There was no physical evidence or eyewitness testimony.[1]

¶6 Thorgerson testified and denied the allegations. The defense presented its theory that D.T., along with her boyfriend and aided by her brother and girl friend, asserted the allegations in order to avoid her father's strict rules. The jury convicted Thorgerson on all counts charged. The trial court denied Thorgerson's motion for a new trial based on prosecutorial misconduct. He appealed, and the Court of Appeals affirmed in an unpublished decision. *State v. Thorgerson,* noted at 150 Wn. App. 1038 (2009), *review granted,* 168 Wn.2d 1010, 226 P.3d 782 (2010).

¶7 Thorgerson maintains that during his trial the prosecuting attorney improperly vouched for D.T.'s credibility and bolstered her testimony, shifted the burden of proof to the defendant, and impugned defense counsel. Thorgerson did not object at trial to any of the instances of claimed prosecutorial misconduct. The facts pertaining to these claims are discussed in detail below.

## ANALYSIS

¶8 To prevail on a claim of prosecutorial misconduct, the defendant must establish " 'that the prosecutor's conduct was both improper and prejudicial in the context of the entire record and the circumstances at trial.' " *State v. Magers,* 164 Wn.2d 174, 191, 189 P.3d 126 (2008) (quoting *State v. Hughes,* 118 Wn. App. 713, 727, 77 P.3d 681 (2003) (citing *State v. Stenson,* 132 Wn.2d 668, 718, 940 P.2d 1239 (1997))); *accord State v. Ish,* 170 Wn.2d 189, 195, 241 P.3d 389 (2010); *State v. Dhaliwal,* 150 Wn.2d 559, 578, 79 P.3d 432 (2003). The burden to establish prejudice requires the

---

[1] As this court has observed, physical and testimonial evidence is commonly unavailable in cases involving sexual abuse of a child. Generally, the child is the only eyewitness and physical corroboration is unavailable because sex offenses against children tend to involve nonviolent conduct. *State v. Young,* 160 Wn.2d 799, 818 n.13, 161 P.3d 967 (2007); *State v. Swan,* 114 Wn.2d 613, 623, 790 P.2d 610 (1990).

defendant to prove that " 'there is a substantial likelihood [that] the instances of misconduct affected the jury's verdict.' " *Magers*, 164 Wn.2d at 191 (alteration in original) (quoting *State v. Pirtle*, 127 Wn.2d 628, 672, 904 P.2d 245 (1995)); *accord Dhaliwal*, 150 Wn.2d at 578; *State v. Russell*, 125 Wn.2d 24, 85, 882 P.2d 747 (1994); *see, e.g.*, *State v. Weber*, 159 Wn.2d 252, 276, 149 P.3d 646 (2006) (defendant failed to prove that prosecutor's misconduct in eliciting testimony barred by pretrial ruling, to which he did not object, caused prejudice affecting the outcome of the trial). The "failure to object to an improper remark constitutes a waiver of error unless the remark is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." *Russell*, 125 Wn.2d at 86; *accord State v. Fisher*, 165 Wn.2d 727, 747, 202 P.3d 937 (2009). When reviewing a claim that prosecutorial misconduct requires reversal, the court should review the statements in the context of the entire case. *Russell*, 125 Wn.2d at 86.

¶9 A prosecuting attorney represents the people and presumptively acts with impartiality in the interest of justice. *Fisher*, 165 Wn.2d at 746. As a quasi-judicial officer, a prosecutor must subdue courtroom zeal for the sake of fairness to the defendant. *Id.*

¶10 <u>Vouching.</u> Improper vouching occurs when the prosecutor expresses a personal belief in the veracity of a witness or indicates that evidence not presented at trial supports the testimony of a witness. *Ish*, 170 Wn.2d at 196. Whether a witness testifies truthfully is an issue entirely within the province of the trier of fact. *Id.*

¶11 Thorgerson maintains that the prosecuting attorney vouched for D.T.'s credibility by suggesting that he knew personally that statements she made outside of the courtroom were consistent with her testimony and bolstered her testimony by implying that the State had information the jury could not hear because of the hearsay rules but which showed D.T. told her story consistently, including

to people who did not testify, and therefore the jury should conclude that D.T. was testifying truthfully. One of the statements about which Thorgerson complains occurred in the prosecutor's opening statement:

> She's got a boyfriend about this time . . . . She confides in him what had happened. And he generally wouldn't be able to testify to—about everything that's said in that conversation because the rules don't allow it. But I do expect that he'll testify the nature [sic] or the demeanor of that conversation, and he'll tell you it's a pretty sad one.

1 VRP (May 19, 2008) at 161.

¶12 In context, this statement concerns a witness's expected testimony, a permissible subject for opening statements. *See Magers*, 164 Wn.2d at 191 ("[d]uring an opening statement, a prosecutor may state what the State's evidence is expected to show"); *see State v. Whelchel*, 115 Wn.2d 708, 727, 801 P.2d 948 (1990). We do not believe this comment rises to the level of misconduct. And, although we do not approve the reference to rules that prevented the boyfriend from relaying all he was told, the prosecutor did not refer to the nature of that testimony or his personal belief in what was said to the boyfriend. Moreover, the jury was instructed that opening statements are not evidence, and the jury must be presumed to have followed this instruction. *See State v. Grisby*, 97 Wn.2d 493, 647 P.2d 6 (1982) (when the trial court instructs that an opening statement is not evidence, the jury is presumed to follow the instruction). Moreover, as discussed below, *defense* counsel raised the issue of the consistency of D.T.'s statements and elicited her testimony that all of her statements, including statements to her boyfriend, were consistent. For all these reasons, even if the reference to the "rules" was misconduct, it was not prejudicial. We agree with the Court of Appeals that there is no likelihood this comment affected the jury verdict.

¶13 The next incident cited by Thorgerson occurred during closing argument, when the prosecuting attorney argued:

We did make a point of asking [D.T.] about all of the people she's talked to. . . . She told her boyfriend, she told a girlfriend, she told her brother, she told the school counselor, she told Deputy Eastep, she talked briefly to a detective. She wrote a written statement on it to the deputy. She talked to a nurse. She's talked to people in my office and an advocate. Others. So we're already past 10.

How many times was the defense able to say, well, isn't it true you told the nurse this? So you never got to hear all the statements. That's why I never got to ask the boyfriend what did she say to you? We were able to describe about the emotion, the demeanor, the timing, things of that nature? But you didn't get the statement that she says to her from me because there's hearsay rules.

3 VRP (May 21, 2008) at 174-75.

¶14 Thorgerson contends these comments constituted misconduct and that prejudice is established because this case turned on the credibility of two witnesses—the victim and the defendant—and the prosecutor's references to consistency of the victim's statements to persons who did not testify at the trial created "a 'substantial likelihood' of affecting the jury" in these circumstances. Pet. for Review at 17.

¶15 Again, we do not condone the prosecutor's reference to the hearsay rules and how they affect production of evidence at trial. But the more important focus here is Thorgerson's claim that the prosecutor's references bolstered D.T.'s testimony and informed the jury that he had personal knowledge and believed that D.T. was telling the truth, and therefore the members of the jury should also believe her.

¶16 As the State correctly points out, the defense itself raised the issue of D.T.'s credibility and whether she consistently told her story of abuse. Thorgerson's counsel

stated in opening argument, "So how do you, as a 17-year-old girl, get out from under the thumb of your father? Well, you come up with a story. And that's what happened in this case." 1 VRP at 168. During cross-examination of D.T., defense counsel returned to this theme and repeatedly questioned D.T. about lying, in connection with her day-to-day activities as she grew up, in connection with her reports of being molested, and in her courtroom testimony. Defense counsel asked the victim if she and her boyfriend had come up with "this story so that you could get out from under the rules your father and mother had in place," to which she responded, "No." 2 VRP at 88. Defense counsel then asked if she had discussed the allegations with the prosecutor, detectives, the school counselor, her boyfriend, another friend, her brother, her grandmother, her mother, the defendant himself, the sheriff's officers, doctors, and the victim's advocate. *Id.* at 95-97. The victim responded that she had discussed the allegations with most of these people but not her brother, her grandmother, her mother, or the defendant. *Id.* Defense counsel then asked her, "And you've told your story . . . numerous times," to which she responded, "Yes." *Id.* at 98. Counsel next asked, "And to the best of your knowledge, it stayed consistent the entire time," to which she again responded, "Yes." *Id.*

¶17 In fact, Thorgerson himself expressly agrees that the State could have argued that the victim's out-of-court statements were all consistent because in response to the defense counsel's question whether she had been consistent every time she told someone about being molested, the victim responded that she had been consistent. In this concession, the defendant is correct. The defense's theory of the case was that the victim was lying and her reports of molestation were part of a scheme she and her boyfriend created in order to be free of her father's strict rules about her activities and dating. Thus, the subject of the victim's consistency in telling others what happened, including persons who did not testify at the trial, was raised by the

defense. The defense also extensively inquired into instances where the victim had lied about various things as she was growing up (and admitted in her testimony that she had done so).

¶18 But Thorgerson maintains that the prosecutor could not call on the jury to rely on evidence the State could not and did not produce, i.e., the actual content of the statements that D.T. made to others, and in particular to persons who did not testify at trial.

¶19 But the prosecutor's references were not to *additional* content, i.e., evidence that could form any additional basis on which to find the defendant guilty. Rather, the prosecutor referred to evidence that the victim made consistent statements to persons who did not testify to this fact at trial. Numerous individuals *did* testify at trial and their testimony was evidence that the victim told a consistent story about the molestation. The defense was able to bring out only one contradiction—the school counselor reported that D.T. said Thorgerson touched her genitals when D.T. testified that she was able to keep him from actually touching her.[2] The whole point of the prosecutor's argument was that D.T. *consistently* told her story.

¶20 In these circumstances, the prosecutor's references to the victim's having made additional out-of-court statements consistent with her in-court testimony, while advising the jury those statements were not admissible as evidence, *possibly* bolstered her credibility to some degree. However, the prosecutor's comment that there was additional consistent testimony is simply unlikely to have made much difference in light of the evidence elicited by defense counsel that D.T. had given a consistent account of the molestation to her boyfriend, her girl friend, her girl friend's mother, her brother, someone from the sheriff's office, detectives, an advocate, a counselor, and the prosecutor and

---

[2] The State explained this contradiction as the witness being mistaken. 3 VRP at 174.

prosecutor's staff. Thorgerson fails to meet his burden to establish a *substantial likelihood* that the outcome of the proceeding was altered.

¶21 Indeed, it is a close question whether misconduct occurred at all. In closing argument the prosecuting attorney has wide latitude to argue reasonable inferences from the evidence, including evidence respecting the credibility of witnesses. *State v. Hoffman*, 116 Wn.2d 51, 94-95, 804 P.2d 577 (1991); *see Fisher*, 165 Wn.2d at 747. Simply put, the question of truth or lying was explored in great detail by the defense, and it is the defense that elicited the victim's testimony that her statements had been consistent to numerous persons identified by the defense, some of whom did not testify at the trial. Because the defense elicited this testimony that she made consistent statements to others who did not testify, the question of such consistency became fair game for comment in closing, where the prosecutor has great latitude to argue from the evidence.

¶22 Thorgerson contends, however, that this case "substantially mirrors" the facts in *State v. Boehning*, 127 Wn. App. 511, 111 P.3d 899 (2005), where prosecutorial misconduct required reversal of the defendant's convictions. Pet. for Review at 10. We disagree. In *Boehning*, 127 Wn. App. at 517, the prosecutor argued that because the defendant had failed to establish that the child victim's out-of-court statements about sexual abuse were inconsistent with her trial testimony, the jury could infer that all of her statements were consistent and true. But in *Boehning*, the defense itself did not initiate and pursue an inquiry into whether the victim had told her story consistently, including to persons who did not testify, as occurred in the present case. Because the defense did so here, the prosecutor's references to the same thing, consistent out-of-court statements, was not likely to have affected the outcome of the trial, as explained.

¶23 In addition, in *Boehning*, the defendant's convictions were reversed in large part because the prosecutor told the

jury that the victim was not able to tell her story as well in court as she had in a safer setting, and discussed three rape counts that had been dismissed, informing the jury "that there were 'some other charges, those charges aren't present anymore because she didn't want to talk about this as much as she was willing to talk about it before.'" *Id.* (emphasis omitted) (quoting transcript). This was, as the Court of Appeals held, highly prejudicial, reversible misconduct. It invited the jury to determine guilt on improper grounds. *Id.* at 522.

¶24 Here, nothing remotely comparable occurred. The prosecutor did not refer to anything that might support other charges and did not suggest that D.T. should be believed because outside of court she provided additional information that would lead the jury to infer she had disclosed more serious allegations that would support additional charges—rather, the prosecutor's argument informed the jury what the defense had already elicited, that she told the *same* story out of court. Thus, unlike in *Boehning*, the prosecutor did not refer to evidence not admitted at trial where that evidence would provide an additional basis for finding the defendant guilty.

¶25 In *Russell*, 125 Wn.2d at 87, in response to the defendant's argument that police had inadequately investigated the murders with which the defendant was charged, the State belittled the idea that the police failed to investigate evidence of innocence and also suggested there might be incriminating evidence that remained undeveloped. The court explained that while it is misconduct for the prosecutor to suggest that evidence not presented at trial provides additional grounds for the jury to return a guilty verdict, it is not misconduct for the prosecutor to argue that evidence does not support the defense theory or to fairly respond to defense counsel's argument. *Id.* The court said it appeared that the prosecutor's statement was aimed more

at responding to defense criticisms than at finding an additional reason to convict. *Id.*[3]

¶26 In the present case, as in *Russell*, the defense theory was the focus of the prosecutor's references, i.e., the consistency of the victim's statements to others and whether she told the truth or had concocted a story for the purpose of avoiding her stepfather's control. Also, as in *Russell*, the prosecutor's references were not to evidence forming an additional reason for finding the defendant guilty. The prosecutor referred to evidence that the victim made consistent statements to persons who did not testify. But numerous individuals *did* testify at trial and their testimony was evidence that the victim told the same story—she was consistent. The references to additional consistent statements did not provide any additional ground for finding the defendant guilty—the evidence was already before the jury and thoroughly developed by the defense.

¶27 Under these circumstances, this case is *not* substantially the same as *Boehning*, contrary to Thorgerson's contention.

¶28 <u>Impugning defense counsel.</u> Thorgerson maintains that in closing argument the prosecuting attorney improperly impugned defense counsel. The prosecuting attorney accused the defense of engaging in "sl[e]ight of hand" tactics and used disparaging terms like "bogus" and "desperation" to describe the defense. 3 VRP at 171-72, 195-96. The prosecuting attorney planned the "sleight of hand" argument in advance. He refrained from objecting to defense evidence to the effect that Thorgerson was a caring father although the prosecutor believed the evidence was immaterial and irrelevant. During cross-examination, the prosecutor asked Thorgerson about this evidence, obtained his

---

[3] In addition, the trial court gave a curative instruction with respect to *defense counsel's* subsequent reference to evidence that had been held back from the defense, instructing the jury that any remarks about additional evidence being withheld were to be disregarded. *Russell*, 125 Wn.2d at 87-88. This court said the curative instruction also ameliorated any effect the prosecutor's statement might have had. *Id.* at 87.

agreement that just because a father would do good things for his daughter would not justify molesting her, and then asked him whether the evidence he had done good things for his daughter had anything to do with the trial, to which Thorgerson replied, "Absolutely not." *Id.* at 151. The prosecutor then asked Thorgerson, "So why have we heard so much of it?" *Id.* Thorgerson answered, "Because that's the type of person that I am." *Id.* at 152.

¶29 In closing argument, the prosecutor referred to the testimony about things Thorgerson had done for his daughter:

So what does a molester look like? Think you can pick him out of a crowd?

The entire defense is sl[e]ight of hand. Look over here, but don't pay attention to there. Pay attention to relatives that didn't testify that have nothing to do with the case. . . . Don't pay attention to the evidence. . . .

[Prosecuting attorney refers to another aspect of the defense.] Your decision comes from the evidence in this case. And that's just another example of sl[e]ight of hand. Look at everything except what matters.

He bought her hamburgers. He bought her socks. He's a good guy. He can't be a molester. Molesters don't do that. Molesters don't look like him.

*Id.* at 195-96.

¶30 It is improper for the prosecutor to disparagingly comment on defense counsel's role or impugn the defense lawyer's integrity. *State v. Warren*, 165 Wn.2d 17, 29-30, 195 P.3d 940 (2008); *State v. Negrete*, 72 Wn. App. 62, 67, 863 P.2d 137 (1993). To the extent these comments can fairly be said to focus on the evidence before the jury, we agree with the Court of Appeals that no misconduct occurred. But unlike the Court of Appeals, we believe the comments are not so restricted. Rather, the prosecutor impugned defense counsel's integrity, particularly in referring to his presentation of his case as "bogus" and involving

"sleight of hand." *Warren*, 165 Wn.2d at 29 (improper for prosecutor to describe defense counsel's argument as a " 'classic example of taking these facts and completely twisting them to their own benefit, and hoping that you are not smart enough to figure out what in fact they are doing' " (quoting court proceedings)). In particular, "sleight of hand" implies wrongful deception or even dishonesty in the context of a court proceeding. *Webster's Third New International Dictionary* 2141 (2003) ("sleight of hand" defined in part as "adroitness and cleverness in accomplishing a deception" and "a cleverly executed trick or deception"). The prosecutor went beyond the bounds of acceptable behavior in disparaging defense counsel. Further, given that the "sleight of hand" argument was planned in advance, we conclude that it was ill-intentioned misconduct.[4]

¶31 Nonetheless, this misconduct was not likely to have altered the outcome of this case. As pointed out, the victim's testimony was consistent throughout the trial and was consistent with what the witnesses testified she had told them before the trial, with one exception. The prosecutor's disparaging remarks essentially told the jury to disregard what the prosecutor believed was irrelevant evidence. While characterizing the defense as "sleight of hand" was entirely inappropriate, it cannot fairly be said to have had a substantial likelihood of altering the jury's determination that relevant evidence showed the defendant committed these crimes.

¶32 In any event, we believe that a curative instruction would have alleviated any prejudicial effect of this poorly thought out attack on defense counsel's strategy.

¶33 Burden of Proof. Finally, Thorgerson maintains that during closing argument the prosecutor improperly shifted the burden of proof to the defense.

---

[4] We do not intend to suggest that the prosecutor was precluded from arguing that the testimony about what the defendant had done for his daughter did not excuse his criminal conduct.

¶34 In closing argument, as mentioned, the prosecuting attorney referred to hearsay statements that could not be introduced because of the hearsay rules, noted that the defense elicited some of the evidence that the prosecutor could not introduce, and then added,

> if they thought there was a contradiction [in D.T.'s story told to various individuals], they were allowed to ask about that. So out of all these versions, all these people she's talked to over a year, how many times did the defense grind out a contradiction? None.
>
> How does somebody do that? How does this bad liar tell it 10 or more times over a year with a conspiracy involving three other young people and nothing breaks down? You know how that works? It's the truth.

3 VRP at 175.

¶35 As mentioned, a prosecutor has wide latitude to argue reasonable inferences from the evidence. However, it is improper for the prosecutor to argue that the burden of proof rests with the defendant. *State v. Gregory*, 158 Wn.2d 759, 859-60, 147 P.3d 1201 (2006). A prosecutor generally cannot comment on the defendant's failure to present evidence because the defendant has no duty to present evidence. *State v. Cheatam*, 150 Wn.2d 626, 652, 81 P.3d 830 (2003); *State v. Cleveland*, 58 Wn. App. 634, 647, 794 P.2d 546 (1990).

¶36 As explained, D.T.'s veracity and the issue of whether she consistently told the same story to numerous persons were thoroughly explored at trial by the defense. The defense expended considerable effort in attempting to establish inconsistencies in D.T.'s story as told to other individuals. Indeed, it was the defense that introduced this issue into this case and opened the door to the prosecutor's argument by trying to obtain contradictory testimony from witnesses. Under these circumstances, we conclude that the prosecutor did not imply that the defense had the burden of producing evidence of inconsistencies. In fact, the defense

having attempted to do exactly this, the prosecutor's comment was a permissible argument based on the evidence.

¶37 Thorgerson also argues that the prosecuting attorney committed misconduct by informing the jury that there was no credible basis for doubting what D.T. said, and "if you believe her, you must find him guilty unless there is a reason to doubt her based on the evidence in the case." 3 VRP at 168. Thorgerson contends that in this argument the prosecuting attorney improperly shifted the burden of proof to the defendant by informing the jurors that they should presume that D.T. was telling the truth.

¶38 In context, the prosecutor discussed the "beyond a reasonable doubt" burden of proof that the State bears, argued that there were no holes in D.T.'s testimony, and advised the jury not to come out of the jury room saying, "[W]ell, we believed her, but we acquitted him." *Id.* In doing so, the prosecutor did not misstate the burden of proof. He then continued with the comment about which Thorgerson complains, "Look, if you believe her, you must find him guilty unless there is a reason to doubt her based on the evidence in the case." *Id.* The prosecutor then said, "And if you don't believe her, he's not guilty." *Id.* In context, the prosecutor did not tell the jury there was a presumption that D.T. was telling the truth, but rather argued that the jurors should believe her testimony and if they did, then they should find Thorgerson guilty. This was not misconduct, particularly given the latitude that a prosecutor has in arguing from the evidence during closing argument.

¶39 Thorgerson also maintains that the cumulative effect of prosecutorial misconduct affected the verdict. Cumulative error may call for reversal, even if each error standing alone would be considered harmless. *Weber*, 159 Wn.2d at 279. However, the doctrine does not apply where the defendant fails to establish how claimed instances of prosecutorial misconduct affected the outcome of the trial or how combined claimed instances affected the outcome of the trial. *Id.* Accordingly, we conclude that the cumulative error doctrine does not apply here.

¶40 Lastly, Thorgerson argues that he was denied constitutional rights. First, he maintains he was denied due process of law and a fair trial, but these claims are tied directly to his claims of prejudicial prosecutorial misconduct. Second, he contends that his counsel was ineffective because counsel failed to object to "flagrant prosecutorial misconduct." Pet. for Review at 20. The Court of Appeals rejected the claim of ineffective assistance of counsel because, since the challenged conduct was not improper or not prejudicial, Thorgerson failed to establish that counsel's performance was deficient. We agree and note in particular that he fails to establish the "flagrant misconduct" upon which he bases his cumulative error claim.

## CONCLUSION

¶41 A defendant has a significant burden when arguing that prosecutorial misconduct requires reversal of his convictions. If he failed to object at the time the misconduct occurred, he must establish that no curative instruction would have obviated any prejudicial effect on the jury and he must establish that prejudice resulted that had a substantial likelihood of affecting the jury verdict. Here, Thorgerson fails to meet his burden.

¶42 The Court of Appeals' decision is affirmed.

C. Johnson, Fairhurst, J.M. Johnson, and Stephens, JJ., concur.

¶43 Chambers, J. (dissenting) — Kenneth Thorgerson was convicted of child molestation. He argues that it was prosecutorial misconduct (1) for the prosecutor to have implied to the jury that there were out-of-court statements to corroborate the State's case, but the jury would not hear those statements because of the hearsay evidence rules; (2) for the prosecutor to have impugned defense counsel; and (3) for the prosecutor to have suggested the defendant

needed to establish inconsistencies in the State's evidence, shifting the burden of proof. Although I do not agree with Thorgerson's third argument, I agree with his first two and would find that the cumulative misconduct was so flagrant and ill intentioned that a curative instruction would not have cured the error. Because I would reverse his conviction and grant a new trial, I respectfully dissent.

## FACTS

¶44 When she was 17 years old, D.T. disclosed to several friends and family members that Thorgerson, her stepfather, had molested her. According to D.T., when she was six or seven years old Thorgerson began forcing her to touch him sexually over his sweat pants. This conduct progressed over a number of years until finally, when D.T. was in the sixth grade, Thorgerson forced her to manipulate his genitals to the point of ejaculation. The abuse continued until D.T. began to refuse when she was in the seventh grade. D.T. did not tell anyone about these events until she confided in her high school boyfriend.[5] In addition to her boyfriend, D.T. also told a friend, her younger brother, and eventually her high school counselor. After hearing D.T.'s story, the counselor contacted the police and Child Protective Services and informed them of the allegations. Thorgerson flatly denied having any improper contact with D.T. He maintained that D.T. and her boyfriend had developed a plan to lie about the molestation in order to be able to spend more time together and avoid Thorgerson's strict rules.

¶45 At trial, the evidence was limited to statements by D.T. and those to whom she had made statements.[6] There

---

[5] The record does not disclose D.T.'s exact age when the abuse ended, but I assume a four- to six-year gap between when the conduct stopped and D.T.'s reporting of the conduct.

[6] The persons to whom D.T. spoke and who testified at trial were (1) Jonathan Westlake, her boyfriend at the time; (2) Jill Backstrom, her friend; (3) N.T., her

was no physical evidence and no eyewitness testimony. Thorgerson was charged with three counts of first degree child molestation and one count of second degree child molestation.

¶46 Thorgerson argues that during his trial, the prosecutor committed several acts of prejudicial misconduct. First, Thorgerson argues the prosecutor improperly vouched for the credibility of witnesses. The facts relevant to this contention are as follows.

¶47 During opening statements, the prosecutor referenced hearsay statements and the hearsay rule that would preclude the jury from hearing the statements, stating:

> She's got a boyfriend about this time . . . . She confides in him what had happened. *And he generally wouldn't be able to testify to – about everything that's said in that conversation because the rules don't allow it.* But I do expect that he'll testify the nature [sic] or the demeanor of that conversation, and he'll tell you it's a pretty sad one.

1 Verbatim Report of Proceedings (VRP) at 161 (emphasis added). The defendant did not object.

¶48 The prosecutor referenced more statements not presented as evidence at trial during his closing argument:

> We did make a point of asking [D.T.] about all the people she's talked to. . . . She told her boyfriend, she told a girlfriend, she told her brother, she told the school counselor, she told Deputy Eastep, she talked briefly to a detective. . . . She talked to a nurse. She's talked to people in my office and an advocate. Others.[7]

3 VRP at 174-75. The prosecutor continued:

> How many times was the defense able to say, well, isn't it true you told the nurse this? *So you never got to hear all the*

---

brother; (4) Lisa Carson, her school counselor; and (5) Scott Wells, a detective who had spoken briefly with D.T.

[7] Deputy Eastep, the nurse, the advocate, and the people in the prosecutor's office did not testify at trial. Nor did any additional "others" to whom D.T. may have spoken.

*statements*. That's why I never got to ask the boyfriend what did she say to you? We were able to describe about the emotion, the demeanor, the timing, things of that nature? *But you didn't get the statement that she says to her from me because there's hearsay rules*.

*Id.* at 175 (emphasis added). Again, Thorgerson did not object.

¶49 Second, Thorgerson contends the prosecutor committed misconduct by improperly impugning defense counsel by accusing the defense of "sleight of hand" and using terms like "bogus" and "desperation" to describe the defense. 3 VRP at 171-72, 195-96. Specifically, Thorgerson points out the prosecutor admitted to planning the sleight-of-hand argument from the beginning. First the prosecutor intentionally did not object when the defendant offered evidence that he was a caring father, which the prosecutor felt was immaterial and irrelevant. *Id.* The prosecutor next engaged in the following cross-examination of Thorgerson:

Q. So what does all that have to do with this trial other than trying to make you look good?

A. Who is trying to make me look good?

Q. Well, if you paid for her clothes and you paid for her car insurance and all the things you did do, I'm not talking about things that she wanted you to do but you couldn't. All the things you did do, what does that have to do with her allegation against you?

A. That's just me being a father to my child.

Q. Right. Does it have anything to do with this trial?[8]

*Id.* at 151.

---

[8] A more complete excerpt of that portion of the cross-examination is as follows:

Q. There's been a lot of testimony about a lot of good things you've done for your children, correct?

A. Correct.

Q. If a father had done all those things for a daughter but still molested her, in your mind, would those things make up for that?

A. No.

¶50 Then during his closing rebuttal argument, the prosecutor referenced the defense tactic of portraying Thorgerson as a caring father as "sleight of hand":

> So what does a molester look like? Think you can pick him out of a crowd?
>
> The entire defense is sl[e]ight of hand. Look over here, but don't pay attention to there. Pay attention to relatives that didn't testify that have nothing to do with this case. . . .
>
> . . . And that's just another example of sl[e]ight of hand. Look at everything except what matters.
>
> He bought her hamburgers. He bought her socks. He's a good guy. He can't be a molester. Molesters don't do that. Molesters don't look like him.

*Id.* at 195-96.

¶51 Finally, Thorgerson contends the prosecutor engaged in misconduct by shifting the burden. The prosecution stated in closing:

> [DEFENSE COUNSEL]. Objection, Your Honor. Improper. It's inflammatory.
> THE COURT. Overruled.
> [PROSECUTOR].
> Q. Was the answer no?
> A. No.
> Q. So regardless of whether or not a father does all these things, it doesn't change a thing if he, in fact, molested his daughter, is that – would you agree with that statement?
> A. I would agree.
> Q. So what does all that have to do with this trial other than trying to make you look good?
> A. Who is trying to make me look good?
> Q. Well, if you paid for her clothes and you paid for her car insurance and all the things you did do, I'm not talking about things that she wanted you to do but you couldn't. All the things you did do, what does that have to do with her allegation against you?
> A. That's just me being a father to my child.
> Q. Right. Does it have anything to do with this trial?
> A. Absolutely not.
> Q. So why have we heard so much of it?
> A. Because that's the type of person that I am.

3 VRP at 150-52.

[I]f [the defense] thought there was a contradiction, they were allowed to ask about that. So out of all these versions, all these people she's talked to over a year, how many times did the defense grind out a contradiction? None.

. . . You know how that works? It's the truth.

*Id.* at 175. This argument, Thorgerson claims, "conveyed that Mr. Thorgerson, not the state, carried the burden of producing evidence regarding his stepdaughter's credibility." Pet. for Review at 14.

¶52 A jury convicted Thorgerson of all charges. The Court of Appeals, Division One, affirmed in an unpublished opinion, and this court granted review. *State v. Thorgerson*, 168 Wn.2d 1010, 226 P.3d 782 (2010).

## ANALYSIS

### STANDARD OF REVIEW

¶53 "Allegations of prosecutorial misconduct are reviewed under an abuse of discretion standard." *State v. Brett*, 126 Wn.2d 136, 174-75, 892 P.2d 29 (1995) (citing *State v. Hughes*, 106 Wn.2d 176, 195, 721 P.2d 902 (1986)); *see also State v. Stenson*, 132 Wn.2d 668, 718, 940 P.2d 1239 (1997). The defendant bears the burden of showing the comments were both improper and prejudicial. *State v. Warren*, 165 Wn.2d 17, 26, 195 P.3d 940 (2008) (citing *State v. Yates*, 161 Wn.2d 714, 774, 168 P.3d 359 (2007)). Improper comments are prejudicial " 'where "there is a *substantial likelihood* the misconduct affected the jury's verdict." ' " *Yates*, 161 Wn.2d at 774 (quoting *State v. McKenzie*, 157 Wn.2d 44, 52, 134 P.3d 221 (2006) (quoting *State v. Brown*, 132 Wn.2d 529, 561, 940 P.2d 546 (1997))).[9] If the defendant

---

[9] This has been our prosecutorial misconduct standard for at least 40 years. *See State v. Music*, 79 Wn.2d 699, 714-15, 489 P.2d 159 (1971), *vacated in part*, 408 U.S. 940, 92 S. Ct. 2877, 33 L. Ed. 2d 764 (1972). The court has recently applied the more rigorous constitutional harmless error standard, requiring proof beyond a reasonable doubt that improper remarks did *not* affect the verdict, where the misconduct involved blatant appeals to racial bias. *State v. Monday*, 171 Wn.2d

fails to object or request a curative instruction at trial, the issue of misconduct is waived unless the conduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice. *Stenson*, 132 Wn.2d at 719. Cumulative error may warrant reversal, even if each error standing alone would otherwise be considered harmless. *State v. Korum*, 157 Wn.2d 614, 652, 141 P.3d 13 (2006) (citing *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000)).

## THE UNIQUE ROLE OF A PROSECUTOR

¶54 It is a noble calling to represent the people. As agents of the State, prosecutors are justifiably held in high regard by jurors. They are presumed to be learned in the law. As the court recently observed:

> A prosecutor serves two important functions. A prosecutor must enforce the law by prosecuting those who have violated the peace and dignity of the state by breaking the law. A prosecutor also functions as the representative of the people in a quasijudicial capacity in a search for justice. *State v. Case*, 49 Wn.2d 66, 70-71, 298 P.2d 500 (1956) (quoting *People v. Fielding*, 158 N.Y. 542, 547, 53 N.E. 497 (1899)).
>
> Defendants are among the people the prosecutor represents. The prosecutor owes a duty to defendants to see that their rights to a constitutionally fair trial are not violated. *Id.* at 71. Thus, a prosecutor must function within boundaries while zealously seeking justice. *Id.*

*State v. Monday*, 171 Wn.2d 667, 676, 257 P.3d 551 (2011) (footnote omitted).

¶55 Prosecutors, like judges, are servants of the law. *State v. Gorman*, 219 Minn. 162, 175, 17 N.W.2d 42 (1944). A prosecutor's success is not measured, like that of an

---

667, 678, 257 P.3d 551 (2011). Here, the prosecutor made no appeal to racial bias, and his remarks did not directly infringe upon a constitutional right of the defendant. *See Warren*, 165 Wn.2d at 26 n.3. Therefore the substantial likelihood standard is the proper standard for determining whether any error in this case was prejudicial or harmless. *See id.*

athlete, by the number of wins and losses at the end of a season. The proper measure of the success of any prosecutor is the prosecutor's devotion to the law, fidelity to the rules of the court and rules of evidence, and dedication to guarding the protections our constitutions and laws afford every person, including the accused. Again, as the court recently observed of the office of prosecutor: "such officers are reminded that a fearless, impartial discharge of public duty, accompanied by a spirit of fairness toward the accused, is the highest commendation they can hope for. Their devotion to duty is not measured, like the prowess of the savage, by the number of their victims." *State v. Montgomery*, 56 Wash. 443, 447-48, 105 P. 1035 (1909), *quoted with approval in Warren*, 165 Wn.2d at 27-28. I add that most prosecutors act admirably in their quasi-judicial capacity and are loyal servants of the law and the cause of justice.

## VOUCHING

¶56 It is misconduct for a prosecutor to personally vouch for the credibility of a witness. *Brett*, 126 Wn.2d at 174. Improper vouching generally occurs if the prosecutor expresses his or her personal belief about the veracity of a witness, or if the prosecutor indicates that evidence not presented at trial supports the witness's testimony. *United States v. Brooks*, 508 F.3d 1205, 1209 (9th Cir. 2007) (quoting *United States v. Hermanek*, 289 F.3d 1076, 1098 (9th Cir. 2002)). "[A]lthough prosecuting attorneys have some latitude to argue facts and inferences from the evidence, they are not permitted to make prejudicial statements not supported by the record." *State v. Weber*, 159 Wn.2d 252, 276, 149 P.3d 646 (2006). Courts review comments made by a prosecutor during closing argument in "the context of the prosecutor's entire argument, the issues in the case, the evidence discussed in the argument, and the jury instructions." *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).

¶57 Here, Thorgerson argues that the prosecutor vouched for D.T.'s credibility by implying he personally knew that out-of-court statements she made were consistent with her testimony. According to Thorgerson, the prosecutor "bolstered [D.T.'s] testimony with inferences that the state had other information that the jury could not hear, but that it should rely on anyway, to believe [D.T.] was telling the truth." Pet. for Review at 13. Specifically, Thorgerson points out that the prosecutor informed the jury that D.T. had told her story consistently to others who had not testified at trial and, although the jury was prevented from hearing those statements by the hearsay rules, the jury should conclude from this out-of-court evidence that D.T. was being truthful. *Id.*

¶58 The Court of Appeals, Division Two, dealt with a similar issue in *State v. Boehning*, 127 Wn. App. 511, 111 P.3d 899 (2005). *Boehning* also involved charges of child molestation. *Id.* at 513. During closing argument the prosecutor in that case, referencing the victim's testimony, stated:

"[H.R.] spoke to Diana Tomlinson. [H.R.] spoke to Carey Price. [H.R.] spoke to this detective here. [H.R.] spoke to Defense counsel. And then [H.R.] spoke to you, many months later.

"And when [H.R.] was speaking, Defense counsel had the opportunity to cross-examine her on any of her previous statements, any of her previous statements to Carey Price, to Detective Holladay, to Diana Tomlinson, to himself, and he did so, remember? He asked some questions about prior stuff.

*"But he never pointed out that she told a different story to these other individuals. . . .*

"The State can't bring up hearsay, but [the defense] can bring up any inconsistent statements, and there *were no inconsistent statements, and that's why you didn't hear them. So she has been very consistent."*

*Id.* at 520 (most alterations in original) (quoting court record).

¶59 The court held these remarks were highly prejudicial and flagrant misconduct. *Id.* The court reasoned that by arguing the victim's out-of-court statements were consistent with her testimony at trial, "the prosecutor left the jury with the impression that these witnesses 'had a great deal of knowledge favorable to the State which, but for the court's rulings, would have been revealed.'" *Id.* at 522 (quoting *State v. Alexander*, 64 Wn. App. 147, 155, 822 P.2d 1250 (1992)). The court noted that the prosecutor had "impermissibly bolstered the victim's credibility by arguing that her prior statements, which were (1) plainly hearsay, (2) not admissible . . . , and (3) not admitted, were consistent with her trial testimony."[10] *Id.* at 514. Although defense counsel failed to object to the prosecutor's arguments in *Boehning*, the court nevertheless held that the misconduct warranted reversal. *Id.* at 518, 523.

¶60 I would apply the reasoning of the *Boehning* court here. First, the prosecutor referenced facts clearly outside of the record to imply that D.T. was a credible witness. Second, the prosecutor's repeated suggestions that D.T.'s inadmissible out-of-court statements were truthful had the effect of telling the jury the content of those statements even though the jury never actually heard them. *See Alexander*, 64 Wn. App. at 155. Such a strategy essentially negates the rule preventing the jury from hearing hearsay statements and impermissibly bolsters the credibility of the witness. Finally, the prosecutor's remarks gave the impression to the jury that the State had additional favorable evidence in the form of numerous consistent statements that the jury was prevented from hearing by the court rules. *See Boehning*, 127 Wn. App. at 522. The prosecutor's statements were highly improper.

---

[10] The majority is correct that the prosecutor in *Boehning* also improperly referred to charges that had been dropped. *Boehning*, 127 Wn. App. at 522. That the prosecutor in *Boehning* made additional improper statements does not alter the court's holding that an argument indistinguishable from the one used here "impermissibly bolstered" the victim's testimony. *Id.* at 514. The court was clear that this separate argument "also constituted prosecutorial misconduct." *Id.*

## IMPUGNING DEFENSE COUNSEL

¶61 It is not misconduct for a prosecutor to argue the evidence does not support the defense's theory of the case. *State v. Russell*, 125 Wn.2d 24, 87, 882 P.2d 747 (1994). However, a prosecutor must not impugn the role or integrity of defense counsel. *See Warren*, 165 Wn.2d at 29-30; *State v. Negrete*, 72 Wn. App. 62, 67, 863 P.2d 137 (1993); *Bruno v. Rushen*, 721 F.2d 1193, 1194-95 (9th Cir. 1983).

¶62 Thorgerson claims the prosecutor impugned defense counsel in two ways. First, the prosecutor intentionally failed to object to evidence he considered irrelevant and asked the defendant argumentative questions concerning trial strategy on cross-examination in order to set up a later argument that defense counsel was engaged in "sl[e]ight of hand." 3 VRP at 150-52, 195-96. Second, the prosecutor referred to the defense's arguments as "bogus" and the result of "desperation." *Id.* at 171-72.

¶63 The State argues that the prosecutor's comments were proper. It asserts that the comments disparaged defense counsel's argument, not defense counsel himself. Suppl. Br. of Resp't at 8. Moreover, the State points out that the cases relied upon by Thorgerson are distinguishable because they contain much more egregious statements regarding defense counsel than the case at hand. *Id.* at 9.

¶64 The comments made by the prosecution in the cases cited by Thorgerson are more blatantly improper than those of the prosecutor in this case. In *Negrete*, 72 Wn. App. at 66 (quoting court record), the prosecutor said defense counsel was " *'being paid to twist the words of the witnesses.'* " The court held the statement was improper but not irreparably prejudicial. *Id.* at 67. In *State v. Gonzales*, 111 Wn. App. 276, 283, 45 P.3d 205 (2002), the prosecutor directly contrasted the roles of prosecutor and defense counsel. Similarly, in *Bruno*, 721 F.2d at 1194 & n.2, "the obvious import of the prosecutor's comments was that *all* defense counsel in

criminal cases are retained solely to lie and distort the facts and camouflage the truth." In contrast, isolated remarks calling defense arguments "bogus" and "desperate," while strong and perhaps close to improper, do not directly impugn the role or integrity of counsel, and such isolated comments are unlikely to amount to prosecutorial misconduct. *See Brown*, 132 Wn.2d at 566 (prosecutor's characterization of defense argument as " 'ludicrous' " was a strong but fair editorial comment on the evidence).

¶65 On the other hand, the prosecutor's statement that "[t]he entire defense is sl[e]ight of hand" is more troublesome. 3 VRP at 195. "Sleight of hand" implies trickery or wrongdoing and can be interpreted as an attack on counsel rather than on counsel's arguments. There is a fine line between disparaging an argument and disparaging defense counsel, and arguments must be made carefully or the line is crossed. "Sleight of hand" suggests an act by an actor; in this case the actor was defense counsel. Here the prosecution twice used the term "sleight of hand" regarding the defense.

¶66 Moreover, the prosecutor admits that he intentionally did not object to evidence he considered irrelevant and aggressively questioned the defendant in cross-examination on the defense strategy specifically in order to make the sleight-of-hand claim in closing. Thus the prosecutor planned to make the sleight-of-hand argument and thereby imply trickery and wrongdoing on the part of defense counsel. These remarks impermissibly impugned defense counsel and were improper.

### BURDEN SHIFTING

¶67 Arguments by the prosecution that shift the burden of proof onto the defense constitute misconduct. *See State v. Gregory*, 158 Wn.2d 759, 859-60, 147 P.3d 1201 (2006). "An argument about the amount or quality of evidence presented by the defense does not necessarily suggest that the

burden of proof rests with the defense." *Id.* at 860. However, a prosecutor generally cannot comment on the lack of defense evidence because the defense has no duty to present evidence. *State v. Cheatam*, 150 Wn.2d 626, 652, 81 P.3d 830 (2003).

¶68 Thorgerson lastly argues that the prosecutor shifted the burden of proof onto the defendant by pointing to the failure of the defendant to raise any prior inconsistent statements. The prosecution stated in closing that "if [the defense] thought there was a contradiction, they were allowed to ask about that. So out of all these versions, all these people she's talked to over a year, how many times did the defense grind out a contradiction? None. . . . You know how that works? It's the truth." 3 VRP at 175. This argument, Thorgerson claims, "conveyed that Mr. Thorgerson, not the state, carried the burden of producing evidence regarding his stepdaughter's credibility." Pet. for Review at 14.

¶69 The State argues no burden shifting occurred. It claims the defendant opened the door to the prosecutor's statements because the defense aggressively cross-examined D.T. and questioned several other witnesses in an attempt to establish inconsistencies. The State also argues that any error or misconduct was waived because Thorgerson failed to object or request a curative instruction.

¶70 Given the defense's efforts to establish inconsistencies in the versions of D.T.'s story, the State has the better argument. It was appropriate for the State to comment on the defense's failure and on the consistency of its evidence because the defense opened the door by trying to extract contradictions from witnesses. Moreover, the prosecutor's comment on the defense's failure to "grind out" inconsistencies was isolated and not a theme. Under these circumstances, the prosecutor did not imply the defense had a burden to develop inconsistencies. To the extent that Thorgerson believed statements by the prosecutor sug-

gested a shifting of the burden of proof or production from the State to the defendant, Thorgerson could have asked for a curative instruction, which would have cured any error. *See Warren*, 165 Wn.2d at 28 (interruption of prosecutor's argument with a correct and thorough curative instruction by trial judge was sufficient to remedy prejudice).

PREJUDICE

¶71 The prosecutor's remarks bolstering the testimony of the complaining witness were both improper and prejudicial. There was no physical evidence of the conduct that, according to D.T., ended years before she reported it. There were no other eyewitnesses present during the incidents D.T. described. The question the jury had to answer in resolving this case was whether it believed D.T.'s version of events or whether it believed Thorgerson's version.

¶72 The prosecutor listed numerous people to whom D.T. told her story, including "people in my office" and, remarkably ambiguously, "[o]thers." 3 VRP at 174-75. He then lamented that the jury "never got to hear" all their statements "because there's hearsay rules." *Id.* at 175. In a case where credibility was critical, the prosecutor intentionally bolstered D.T.'s testimony by suggesting to the jury that D.T. had consistently told others who never testified exactly what she had testified to in court even though he knew that evidence was inadmissible. He implied to the jury that if only the hearsay rules had not prevented those people from testifying and revealing what D.T. told them, the jury would have known what he knew—that all her statements were in fact consistent—and thus they should be more convinced by D.T.'s version than Thorgerson's version. The prosecutor's arguments suggested that hearsay evidence not presented at trial supported D.T.'s testimony and thus provided additional grounds for finding the defendant guilty.[11] *See*

---

[11] The majority suggests that only a reference to additional *content* in D.T.'s out-of-court statements could support a conclusion that the prosecutor's argu-

*Russell,* 125 Wn.2d at 87 (citing *United States v. Garza,* 608 F.2d 659, 663 (5th Cir. 1979)); *see also Brooks,* 508 F.3d at 1209 (quoting *Hermanek,* 289 F.3d at 1098). In a trial that turned on credibility, the prosecutor's bolstering of the complaining witness's testimony by referencing out-of-court statements the jury was not permitted to hear had a substantial likelihood of affecting the jury's verdict.

¶73 The State contends that because the defendant failed to object or ask for a curative instruction, the issue is waived on appeal. *See Stenson,* 132 Wn.2d at 719. As mentioned already, as representatives of the government of the people, prosecutors are justifiably held in high regard by jurors. The purpose of the rules of evidence is "that the truth may be ascertained and proceedings justly determined." ER 102. When a prosecutor flouts the law and the rules of evidence by persistently asking improper questions or knowingly and intentionally ignoring the rules of evidence for the purpose of presenting to the jury evidence that the law does not permit the jury to hear, the prosecutor intentionally prejudices the defendant and the cause of justice. *See Stewart v. Commonwealth,* 185 Ky. 34, 213 S.W. 185, 188 (1919) (refusal of the court to permit the witness to answer improper questions cannot remove the prejudicial effect that the questions had on the minds of the jury). Often where, as here, the prosecutor suggests that it is the law, the courts, and the system itself that is preventing the jury from hearing important evidence, a curative instruction will not be effective in overcoming the prejudice

---

ments provided additional impermissible ground for finding the defendant guilty. Majority at 447-48. This is contrary to the reasoning in *Boehning* above and sets a potentially harmful precedent. This court should be clear that arguments commenting on the consistency between in-court testimony and out-of-court hearsay statements to witnesses who never testified and lamenting the rules that prevent the jury from hearing those statements are entirely improper. The defense raised the issue of consistency, and thus, as I have explained, it was not improper for the prosecutor to point out the failure of the defense to find any inconsistencies. But the defense's raising the issue of consistency does not provide a justification for bolstering the victim's testimony with the arguments relied on by the prosecutor in this case.

because the prosecutor has implied the court itself is obstructing the truth. *See Alexander*, 64 Wn. App. at 155 (prosecutor's repeated attempts in closing to instill inadmissible evidence in jurors' minds despite court sustaining numerous objections on the matter during trial was flagrant and ill-intentioned misconduct).

¶74 The prosecutor's remarks impugning defense counsel were also improper. The prosecutor admitted that he planned his remarks as part of his strategy. While perhaps not prejudicial standing alone, these comments must be viewed in context and in combination with any other misconduct. *See Korum*, 157 Wn.2d at 652; *Dhaliwal*, 150 Wn.2d at 578. Taken together with the prosecutor's vouching and flouting of the court and its rules of evidence, I would hold the cumulative misconduct was so flagrant and ill intentioned that a curative instruction could not have remedied the prejudice. The defendant must show a "substantial likelihood" that the verdict was affected. *State v. Pirtle*, 127 Wn.2d 628, 672, 904 P.2d 245 (1995). The defendant met that burden here.

## CONCLUSION

¶75 The prosecutor in this case improperly vouched for a witness's credibility by referring to inadmissible statements and flouted the law and court rules by implying the rules were standing in the way of the truth. Moreover, the prosecutor's remarks impugned defense counsel. Taken as a whole and in context, the prosecutor's conduct was so flagrant and ill intentioned that an instruction would not have cured the resulting prejudice. Because I believe the proper remedy in this case is reversal and remand for a new trial, I dissent.

ALEXANDER and OWENS, JJ., and SANDERS, J. PRO TEM., concur with CHAMBERS, J.