# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

JENA ASHLEY DOLPH,

Appellant.

No. 79578-3-I

DIVISION ONE

UNPUBLISHED OPINION

APPELWICK, J. — Dolph appeals her conviction for possession of a controlled substance. She argues that the prosecutor committed prejudicial misconduct by (1) misstating the law as to her unwitting possession defense and (2) misleading the jury about its duty to consider all the evidence in assessing her defense. We affirm.

## FACTS

In July 2016, Officers Oleg Kravchun and Anatoliy Kravchun made contact with Jena Dolph while she was seated in her Mazda at a McDonald's in Everett. They briefly spoke to a man who was seated in the passenger seat as well. After Dolph and the man left in her vehicle, Officer Oleg[1] and Officer Anatoliy discovered that the individual was Dolph's boyfriend, Ray Galvan, and that he had several active warrants. Officer Oleg tried driving around and looking for Galvan, but was unable to locate him.

---

[1] For clarity, we refer to Officers Oleg and Anatoliy by their first names.

Citations and pin cites are based on the Westlaw online version of the cited material.

After he was unable to locate Galvan, Officer Oleg used a fake Facebook profile with the name "TJ Johnson" to send a friend request to what he believed was Galvan's account. Officer Oleg hoped that by doing so he could find out where Galvan was. However, Galvan did not respond to the request. Several months later, Officer Oleg sent a message from the Johnson profile to what he believed was Dolph's account. Dolph responded the next day and asked, "Who you looking for?" Officer Oleg responded as Johnson and asked if he could get a "T," a slang term for one sixteenth of an ounce of heroin. Dolph replied asking Johnson how he knew her. Officer Oleg did not respond.

Several days later, Galvan accepted the friend request from the Johnson Facebook account and sent a message asking if he needed any "dark," another slang term for heroin. For about a week, both Officer Oleg and Officer Anatoliy continued to converse as Johnson with Galvan's and Dolph's accounts. But, even when they conversed with Dolph's account, Officer Oleg believed that they were speaking only with Galvan. Galvan eventually arranged to sell a gram and a half of heroin to Johnson on December 15, 2016. He agreed to meet Johnson after 8:00 p.m. at a Safeway parking lot.

Once Officers Oleg and Anatoliy were on scene at the Safeway parking lot, they saw the same Mazda that Dolph had been driving in July 2016. They also received a message from Dolph's Facebook account asking Johnson what kind of vehicle he was in. Officer Oleg observed Galvan in the driver's seat of Dolph's Mazda. He noticed that the passenger seat was reclined, but could not see if anyone was in the seat.

Officers Oleg and Anatoliy then made contact with the vehicle. Officer Oleg walked up to the driver's side, contacted Galvan, had him step outside, and placed him under arrest. Galvan was compliant and cooperative. In a search incident to arrest, Officer Oleg found a brown, sticky substance wrapped in plastic in Galvan's right pant pocket, along with a syringe. Officer Oleg believed that the substance was heroin. After Officer Oleg advised Galvan of his constitutional rights, Galvan agreed to speak with him. He confirmed that the substance in his pocket was the heroin he had agreed to sell to Johnson.

While Officer Oleg was with Galvan, Officer Anatoliy saw that Dolph was sitting in the passenger seat of her vehicle. He also observed a digital scale in the center console. The scale looked like it had heroin residue on it. At that point, Officer Anatoliy arrested Dolph and advised her of her constitutional rights. Dolph agreed to speak with Officer Anatoliy. She was not happy about being arrested and began to cry during their conversation. She told Officer Anatoliy that she had been sleeping while Galvan was using her phone, and that Galvan was supposed to meet somebody named "TJ" at Safeway. Officer Anatoliy then asked her if Galvan "had ever met with TJ or sold him drugs before." She responded that Galvan had sold him drugs at least once before. Officer Anatoliy also asked Dolph if there were any drugs in the car. She responded that there were not.

Officer Anatoliy then conducted a search incident to arrest. In the pocket of the coat Dolph was wearing, he found about five grams of what later tested positive as heroin. He also found a small amount of what later tested positive as methamphetamine. Dolph told Officer Anatoliy that the drugs were not hers, and

that they belonged to Galvan. She explained that the coat belonged to Galvan as well, and that she was only wearing it because she was cold. She admitted to Officer Anatoliy that she was a heroin user, but stated that she did not use methamphetamine. She never explicitly told Officer Anatoliy that she did not know the drugs were there. At one point during the exchange, Galvan walked by and told Anatoliy that the drugs belonged to him.

The State charged Dolph with one count of possession of a controlled substance with intent to manufacture or deliver. At trial, the court instructed the jury that if it found by a preponderance of the evidence that Dolph possessed the drugs unwittingly, it had a duty to return a not guilty verdict. During closing argument, defense counsel argued unwitting possession. He stated that all of the testimony in the case pointed to the fact that Dolph had no idea that the coat she was wearing had drugs in it. The State opposed this argument in its rebuttal. In discussing the testimony relevant to unwitting possession, it stated in part,

> So what did the defense have to do to get this unwitting possession in front of you? They had to call a witness. And who did they choose? Mr. Galvan. So for you to even find the preponderance, you have to find Mr. Galvan credible. You have to believe what he said.

The jury found Dolph guilty of the lesser included offense of possession of a controlled substance. The trial court sentenced her to 10 days of confinement, 30 days of electronic home monitoring, and 40 hours of community restitution. Dolph appeals.

DISCUSSION

Dolph argues that the prosecutor committed prejudicial misconduct by (1) misstating the law as to her unwitting possession defense and (2) misleading the jury about its duty to consider all the evidence in assessing her defense. She asserts that this misconduct undermined her ability to secure a fair verdict and therefore requires reversal.

Specifically, Dolph contends that the prosecutor misstated the law by telling the jury that she had to call a witness to establish an unwitting possession defense. She also argues that the prosecutor "improperly narrowed the scope of the evidence by falsely claiming Dolph's affirmative defense rested solely on the jury's determination of Galvan's credibility."

A defendant claiming prosecutorial misconduct must demonstrate that the prosecutor's conduct at trial was both improper and prejudicial. State v. Sakellis, 164 Wn. App. 170, 183, 269 P.3d 1029 (2011). "Once a defendant has demonstrated that the prosecutor's conduct was improper, we evaluate the defendant's claim of prejudice on the merits under two different standards of review depending on whether the defendant objected at trial." Id.

Dolph failed to object to the above statements at trial. As a result, our review is limited to determining whether the alleged misconduct was so flagrant and ill-intentioned that an instruction could not have cured the resulting prejudice. Id. at 184. "This standard requires the defendant to establish that (1) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict,' and (2) no curative instruction would have obviated the prejudicial effect on the

jury." Id. (quoting State v. Thorgerson, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

When reviewing a claim that prosecutorial misconduct requires reversal, we review

the statements in the context of the entire case. Thorgerson, 172 Wn.2d at 443.

A prosecutor commits misconduct by misstating the law. State v. Allen, 182

Wn.2d 364, 373-74, 341 P.3d 268 (2015). "The prosecuting attorney misstating

the law of the case to the jury is a serious irregularity having the grave potential to

mislead the jury." State v. Davenport, 100 Wn.2d 757, 763, 675 P.2d 1213 (1984).

The trial court issued the following jury instruction regarding Dolph's unwitting

possession defense:

> A person is not guilty of Possession of a Controlled Substance with Intent to Manufacture of Deliver, or of Possession of a Controlled Substance, if the possession is unwitting. Possession of a controlled substance is unwitting if a person did not know that the substance was in her possession.
>
> The burden is on the defendant to prove by a preponderance of the evidence that the substance was possessed unwittingly. Preponderance of the evidence means that you must be persuaded, considering all of the evidence in the case, that it is more probably true than not true.
>
> If you find from the evidence that the defendant has proved this defense, then it will be your duty to return a verdict of not guilty, both as to the charged crime, and as to the lesser crime, if applicable.[2]

(Emphasis added.)

---

[2] The record does not reflect that Dolph or the State objected to this instruction. As a result, it is the law of the case. See State v. Hickman, 135 Wn.2d 97, 101-02, 954 P.2d 900 (1998).

During rebuttal closing argument, the prosecutor made the following statements regarding Dolph's unwitting possession defense:

> [Dolph has] to prove by a preponderance that [she] didn't know the drugs were on her. [Defense counsel] is arguing that she had no knowledge because, and, I quote, the jacket belonged to [Galvan], the items in the jacket belonged to [Galvan], and everyone agreed that it all belonged to [Galvan]. That's ownership. Not knowledge. It doesn't matter. Sure. She is not the owner. But there was no evidence that she did not know the drugs were in there until they called Mr. Galvan [as a witness].
>
> Anatoliy Kravchun is the officer that arrested the defendant. Officer Oleg Kravchun testified that he could overhear the defendant getting upset, but couldn't really hear the gist of any conversation. So it came down to Anatoliy Kravchun. I asked Anatoliy Kravchun if the defendant ever mentioned at any point that I didn't know [the drugs] were there, I didn't know the drugs were on me, I didn't know. Officer Anatoliy Kravchun, of course, had to refresh his recollection again, but I made sure to ask him that if this is something that she said, would you have put it in your report? Yes. He scoured his report again. No mention. No mention.
>
> <u>So what did the defense have to do to get this unwitting possession in front of you? They had to call a witness.</u> And who did they choose? Mr. Galvan. <u>So for you to even find the preponderance, you have to find Mr. Galvan credible.</u> You have to believe what he said.

(Emphasis added.) The State then went on to attack Galvan's credibility.

Viewing the prosecutor's statements in the context of the entire case, it is clear that she did not state that the <u>law</u> requires a defendant to call a witness to establish an unwitting possession defense. The trial court instructed the jury that, to establish the defense, Dolph had to prove by a preponderance of the evidence that she possessed the drugs unwittingly. After recounting Officer Oleg's and Officer Anatoliy's testimony about what Dolph had told them, the prosecutor argued that the officers' testimony did not prove by a preponderance of the

7

evidence that Dolph was unaware of the drugs in the coat. Specifically, Officer Anatoliy made the following statements during cross-examination:

Q.     And at no time did [Dolph] ever indicate that she was involved in the selling of any drugs, correct?

A.     Correct.

Q.     In fact, she indicated just the opposite?

A.     Yes.

Q.     And at no time did she admit to knowingly possessing drugs; is that correct?

A.     Correct.

Q.     Again, quite the opposite --

A.     Yes.

Q.     -- she denied?  Thank you.

Officer Anatoliy was then asked explicitly on redirect examination whether Dolph stated that she did not know the drugs were in the coat. Before answering, Officer Anatoliy refreshed his recollection by reviewing his report. When asked again if Dolph ever said that she did not know the drugs were there, Officer Anatoliy responded, "No."

Based on the lack of testimony supporting that Dolph did not know the drugs were in the coat, the prosecutor explained that Dolph needed to call a witness who could testify otherwise. Dolph did so by calling Galvan, who testified that there were items in his coat, including drugs, that Dolph was unaware of. In closing argument, the prosecutor has wide latitude to argue reasonable inferences from the evidence. Thorgerson, 172 Wn.2d at 448. The prosecutor here exercised that

8

wide latitude by arguing that the officers' testimony did not support unwitting possession. As a result, she argued that Dolph had to call her own witness to establish the defense. The prosecutor did not misstate the law.

It is also clear that the prosecutor did not improperly mislead the jury as to its duty to consider all the evidence when assessing Dolph's unwitting possession defense. As stated above, the prosecutor argued that Officer Oleg's and Officer Anatoliy's testimony did not prove by a preponderance of the evidence that Dolph was unaware of the drugs in the coat. By contrast, Galvan's testimony indicated that Dolph was unaware of the drugs. Thus, the prosecutor argued that to find sufficient evidence supporting the defense, the jury had to find Galvan credible. She did not direct the jury to disregard all the other evidence in the case. Instead, she argued that Dolph could not meet her burden by relying on the other evidence, and that Dolph's defense therefore hinged on Galvan's credibility.

The prosecutor's statements regarding Dolph's unwitting possession defense do not constitute misconduct. Accordingly, Dolph's prosecutorial misconduct claim fails.

We affirm.

_Appelwick, J._

WE CONCUR:

_____          ___Leach, J.___