# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 73262-5-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| GARY DARYLL BENTLEY, JR., | ) | |
| | ) | |
| Appellant. | ) | FILED: July 25, 2016 |
| | ) | |

APPELWICK, J. — Bentley appeals his conviction for assault in the third degree and possession of a stolen vehicle. He contends the prosecutor engaged in misconduct by making improper comments during closing argument. We affirm.

## FACTS

On August 26, 2014, Gustavo Pena was preparing to leave his Seattle home for a vacation. His house is across the street from a baseball playfield. He noticed a person sitting across from his house on the bleachers of the baseball field looking straight at his house. Pena was concerned, because the bleachers did not face his house and the person was looking attentively at his house anyway. Pena observed the individual for 20 to 30 minutes. He noticed that the individual was an African American man, between the age of 30 to 40, with a shaved or bald head, and a goatee.

Pena was concerned about the man, but needed to leave his house to catch his flight. Pena left his house with two large suitcases and got into a taxicab. The man was still sitting across the street from Pena's house when he left. Two days

later, while he was in Columbia, Pena received a call from a neighbor and learned that his home had been burglarized. Pena's neighbor also informed him that his 2006 Land Rover[1] was missing from his driveway. Pena kept a set of spare car keys in his house.

On August 29, 2014, Deputy Christopher Dearth was on patrol. He learned that an older Land Rover had been reported stolen. Toward the end of Deputy Dearth's shift another officer broadcasted that he saw a vehicle matching the description of the stolen vehicle parked on the side of a road. Deputy Dearth went to investigate.

When he arrived, Deputy Dearth confirmed that the Land Rover was the vehicle that had been reported as stolen. William Juell was sitting in a truck behind the Land Rover. Gary Bentley was getting into the driver's seat of the Land Rover and Russell Bentley[2] was standing outside on the passenger side of the Land Rover. Juell had stopped to help Russell and Bentley, because he saw the Land Rover stalled in the middle of the road. The vehicle had run out of gas, and Juell took them to get gas.

Deputy Dearth briefly spoke to Juell. Then, Deputy Dearth engaged Russell and Bentley in casual conversation. Deputy Dearth wanted to wait until additional backup arrived before confronting the men about the stolen vehicle. After

---

[1] The vehicle is referred to as both a Land Rover and a Range Rover throughout the record. Because Pena identified his vehicle as a Land Rover and because there is no contention that the vehicle in question is not Pena's, we refer to the vehicle as a Land Rover.

[2] Russell is Gary's uncle. We refer to Russell by his first name for the sake of clarity. No disrespect is intended.

2

additional officers arrived, Deputy Dearth announced that Bentley and Russell were under arrest, because the car was stolen. Deputy Dearth attempted to handcuff Bentley. A struggle ensued and Bentley struck Deputy Dearth and another officer. The officers were eventually able to take Bentley into custody.

The King County Sheriff's Office notified Pena that his vehicle had been located. Pena returned from Columbia on September 9 and went to the SeaTac Police Department to retrieve his car. A detective showed Pena a photo lineup of six pictures. He asked Pena if he could identify the man who was watching his house the day he left for his trip. Pena could not identify him.

On September 4, 2014, the State charged Bentley with two counts of assault in the third degree for assaulting two police officers and with possession of a stolen vehicle. Pena testified at trial. Pena testified to the physical description of the man who had been watching his house on the day he left for his vacation. Later during his testimony, the State asked Pena if he found "something" in his house when he returned home. Pena indicated that he did find something in his house. Bentley immediately objected, asserting that the line of questioning was irrelevant. The trial court asked the State where the line of questioning was headed. The State responded that facial hair had been found at the house. Outside of the presence of the jury, the State explained that facial hair was found in the bathroom sink in Pena's house and that it could be from an African American individual. The State explained that this was relevant because the hair could

3

belong to the African American person Pena saw watching his house. Bentley's counsel responded:

> [H]e's not being charged with burglary. I don't like the entire line of inquiry into the burglary. I know that there was a burglary, that's how the vehicle was presumably stolen, so I can't really object to the existence of the burglary, but I feel like we're getting too deep into the facts of the burglary and not into the actual charge that he's charged with. Clearly the State wants to infer or imply that Mr. Bentley was the burglar as well and I think that's unfair, given that Mr. Pena can't identify him as the burglar. It's just piling on inferences upon inferences that actually don't lead anywhere, but it makes it look like the State has further evidence somehow that Mr. Bentley was the burglar but just hasn't charged him. So I think it's unfair and prejudicial to get too far into the burglary.

The trial court sustained the objection, noting that Pena did not have sufficient foundational knowledge regarding the facial hair. The court further noted that if there was any minor probative value it was outweighed by confusion of the issues and prejudicial effect under ER 403.

During closing argument, the prosecutor reviewed Pena's testimony, including his testimony about the physical description of the individual who had been watching Pena's house:

> And he described an African American male with a balding head, a goatee and no shirt, somewhat muscular build. A person not unlike the defendant. Now it's true that Mr. Pena could not pick him individually out when he got back three or four weeks later and was shown some pictures, but you recall he said he was probably at a distance from here to the door. But got the general physical description, and we know it wasn't a female that was watching the house, it wasn't a Hispanic person with long hair –

At that point, Bentley objected on the basis of relevance noting that the identity of the burglar does not have anything to do with Bentley. The trial court overruled the objection and stated that Bentley would have the opportunity to make a counter

4

argument. The prosecutor continued, noting that two days after Pena left he received a call that his house had been burglarized.

The jury found Bentley guilty as charged. Bentley appeals.

DISCUSSION

Bentley argues that the prosecutor engaged in prosecutorial misconduct during closing argument. Prosecutorial misconduct may deprive a defendant of his right to a fair trial. State v. Davenport, 100 Wn.2d 757, 762, 675 P.2d 1213 (1984). An appellant claiming prosecutorial misconduct must show both improper conduct and resulting prejudice. State v. Warren, 165 Wn.2d 17, 26, 195 P.3d 940 (2008). Prejudice exists only where there is a substantial likelihood the misconduct affected the jury's verdict. State v. McKenzie, 157 Wn.2d 44, 52, 134 P.3d 221 (2006). A prosecutor has wide latitude in closing argument to draw reasonable inferences from the evidence and to express such inferences to the jury. State v. Boehning, 127 Wn. App. 511, 519, 111 P.3d 899 (2005).

A prosecutor's comments during closing argument are reviewed in context of the total argument, the issues in the case, the evidence addressed in the argument, and the jury instructions. McKenzie, 157 Wn.2d at 52. It is improper for the prosecutor to argue that the burden of proof rests with the defendant. State v. Thorgerson, 172 Wn.2d 438, 453, 258 P.3d 43 (2011). Therefore, a prosecutor generally cannot comment on the defendant's failure to present evidence because the defendant has no duty to present evidence. Id.

Knowledge that the Land Rover was stolen was an element the State had to prove to convict Bentley of possession of a stolen vehicle. See 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 77.21, at 177 (3d ed. 2008). During closing argument, the State emphasized Bentley's possible involvement with the burglary presumably to prove that Bentley had knowledge. Bentley asserts that the prosecutor improperly shifted the burden of proof by implying that he had a burden to present favorable or exculpatory evidence showing that he did not commit the burglary.

None of the prosecutor's remarks in closing argument explicitly commented on Bentley's failure to present evidence, exculpatory or otherwise. And, we find nothing in the prosecutor's closing argument to support a characterization that she implicitly commented on the fact that Bentley did not provide any evidence contradicting that allegation. And, to the extent the prosecutor's closing argument implied Bentley was involved with the burglary based on evidence in the record, this was not improper.[3] Boehning, 127 Wn. App. at 519. The prosecutor's argument did not shift the burden to Bentley.

Bentley further asserts that the trial court's ruling on his objection during closing argument—informing him he could make a counter argument in his closing

---

[3] Bentley also implies that the prosecutor's remarks were in contravention of the trial court's ruling excluding evidence about the burglary. Bentley asserts that the court refused to allow any testimony suggesting Bentley had burglarized Pena's house. This is a mischaracterization of the record. During trial, Bentley did not object to Pena's testimony regarding the man watching his home or the description of the man. He objected only when the State attempted to admit evidence of the facial hair found at Pena's house. The trial court sustained the objection to only that specific evidence. The trial court never excluded all evidence suggesting that Bentley burglarized Pena's house.

argument—compounded the error. He asserts that the trial court's ruling suggested that Bentley, "could present a counter argument to the State's impermissible argument, putting forth the favorable or exculpatory evidence that he was not constitutionally required to present in the first place." However, the trial court was merely commenting that Bentley would have the opportunity to rebut the inferences the prosecutor was drawing. The trial court did not state that Bentley had the obligation to rebut the inferences through evidence or otherwise.

Absent error, we need not address the issue of prejudice. See Warren, 165 Wn.2d at 26 (stating that a defendant must first show that the prosecutor's comments were improper in order to prevail on a claim of prosecutorial misconduct).

We affirm.

WE CONCUR: