IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                    Respondent,<br><br>          v.<br><br>JUSTIN TODD VAN BRACKLE,<br><br>                    Appellant. | No. 80184-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — Justin Van Brackle, his girlfriend, Amy Crawford, and their acquaintance, Matthew Sires, robbed Crystal Curtis. Sires testified against Van Brackle in exchange for more lenient treatment by the State. During the State's direct examination of Sires, the prosecutor asked Sires if he had promised to testify truthfully in exchange for a reduced charge. Sires confirmed that he had. The jury found Van Brackle guilty of, among other crimes, first degree robbery with a firearm committed while on community custody. The court imposed a standard range sentence and waived all discretionary legal financial obligations. However, the form language in the judgment and sentence required Van Brackle to pay community custody supervision fees.

Van Brackle asserts that the prosecutor committed misconduct when it asked whether Sires agreed to testify truthfully. Because Van Brackle failed to show that the prosecutor's statements were flagrant or ill intentioned or that a jury instruction could not have cured any prejudice, his claim of prosecutorial misconduct fails, and we affirm his conviction. However, because supervision

Citations and pin cites are based on the Westlaw online version of the cited material.

fees are discretionary and the court found Van Brackle indigent, we remand to strike the form language imposing supervision fees on Van Brackle.

FACTS

In the early morning of September 4, 2018, Curtis was robbed. The witnesses provided conflicting testimony at trial.

Curtis alleged that prior to the robbery, she was in her apartment with her neighbor, Michael Kriegel, and her friend, JJ Tedesco, and that the three of them were "getting high" on methamphetamine. At some point, Curtis called Sires to ask him for a ride to her bank. When she found out that Sires was with Crawford and Van Brackle, Curtis told him that he was "not allowed to come over" with either of them.

Curtis testified that about 10 minutes after calling Sires, Van Brackle and Crawford showed up at her apartment door and that Kriegel opened the door and then left. When Curtis told them to leave, Van Brackle asked Crawford for "the gun," and Crawford gave him "a nickel plated .380 with a pink handle" from the inside of her coat. While Van Brackle pointed the gun at Curtis's head, Crawford went to take Curtis's purse. Curtis described the event:

> She came towards me. I tried to block her from getting my purse. She passed me. . . . She gets my purse. She beelines it for the door. JJ then attempted to stop her. She got past JJ, and Justin was shortly behind her, and I ran after them, got ahold of the handle of my purse, and played tug of war with Amy.

Curtis and Tedesco followed Van Brackle and Crawford out of the apartment, where they got into Sires' car. Curtis attempted to grab her purse out of Crawford's lap. Van Brackle then instructed Crawford to give Curtis her purse

2

back. Tedesco stabbed the tire on Sires' car, and Sires "stopped, briefly." "Ms. K," Curtis's neighbor, wrote down the vehicle's license plate number, and then Sires drove away.

Sires testified that he had called Curtis to see if she would "front" him drugs.[1] Sires said that Curtis agreed to front him drugs but would not give any to Crawford or Van Brackle. Sires alleged that this upset Crawford and Van Brackle and that the three of them discussed robbing Curtis. Shortly thereafter, Sires drove to the alley by Curtis's apartment. He testified that Crawford grabbed Van Brackle's gun, which had pink on its handle. Crawford then went into the apartment with the gun. Sires alleged that when Crawford had not returned within 10 minutes, Van Brackle left the car and went to "make sure everything was going right." He testified that he could not see Curtis's apartment door from his vehicle but that Van Brackle went towards her apartment.

Crawford's testimony differed from Sires. She testified that she was angry with Curtis for disrespecting Van Brackle and decided to rob her. Specifically, Crawford stated that Van Brackle was asleep in Sires' car when she robbed Curtis with his gun. Crawford alleged that at the time, Van Brackle had an infection in his arm that prevented him from raising his arm or manipulating objects with it. She claimed that while she headed to Curtis's apartment, Van Brackle woke up and went to visit his "street mom," Melanie Evans, who lived in an apartment "right above" Curtis's. However, Curtis testified that Evans passed

---

[1] Curtis explained that she would give friends or acquaintances drugs in exchange for a promise to pay her later.

away about two months before the incident.

Curtis did not call the police, but her neighbor did. Officer Stephen Spaeth of the Everett Police Department spoke to Curtis to determine who had robbed her. Curtis told Officer Spaeth that Van Brackle and Crawford robbed her, and she described Sires' vehicle. Officer Scott Lee investigated the incident and found Sires, Van Brackle, and Crawford when the Snohomish County Sheriff's Office located Sires' vehicle at Sires' home. When Officer Lee went to arrest Van Brackle, he noticed what appeared to be a gun holster on Van Brackle's belt. A warrant was issued for the home, and during the search, the officers found a firearm matching the description given by Curtis.

The State charged Van Brackle with first degree robbery with a firearm, committed while on community custody, first degree burglary with a firearm, committed while on community custody, and unlawful possession of a firearm in the first degree, committed while on community custody.

At trial, in its direct examination of Sires, the prosecutor asked Sires, "Are you testifying truthfully," to which Sires responded, "I am." In the State's closing argument, the prosecutor reiterated that Sires received a deal for testifying "truthfully." The prosecutor also highlighted that Sires had told the police what had happened immediately upon being arrested and without the promise of lenient treatment by the State.

The jury found Van Brackle guilty as charged.

The trial court imposed standard range sentences and community custody. The court found Van Brackle indigent and imposed only the mandatory

victim penalty assessment and restitution. However, the judgment and sentence contained preprinted language requiring Van Brackle to pay supervision fees. Van Brackle appeals.

ANALYSIS

Prosecutorial Misconduct

Van Brackle asserts that the prosecutor committed misconduct, depriving him of his right to a fair trial. We disagree.

Prosecutorial misconduct may deprive a defendant of their guaranty to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22 of the Washington State Constitution. In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 703-04, 286 P.3d 673 (2012) (plurality opinion). "To prevail on a prosecutorial misconduct claim, a defendant who timely objects to a prosecutor's conduct at trial must prove that the 'conduct was both improper and prejudicial in the context of the entire trial.'" State v. Loughbom, 196 Wn.2d 64, 70, 470 P.3d 499 (2020) (quoting State v. Walker, 182 Wn.2d 463, 477, 341 P.3d 976 (2015)). "If the defendant did not object at trial, the defendant is deemed to have waived any error, unless the prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). "Under this heightened standard, the defendant must show that (1) 'no curative instruction would have obviated any prejudicial effect on the jury' and (2) the misconduct resulted in prejudice that 'had a substantial likelihood of affecting the jury verdict.'" Emery, 174 Wn.2d at 761 (quoting State v.

Thorgerson, 172 Wn.2d 438, 455, 258 P.3d 43 (2011)).

State v. Ish, 170 Wn.2d 189, 241 P.3d 389 (2010), is instructive. In Ish, Nathaniel Ish was convicted of second degree felony murder after beating his girlfriend, Katy Hall, to death. 170 Wn.2d at 190, 192. Prior to trial, the State entered into a plea agreement with Ish's cellmate, David Otterson, granting him a reduced sentence in exchange for his testimony against Ish at trial. Ish, 170 Wn.2d at 192. Ish moved to redact the agreement's numerous self-serving statements that Otterson must testify truthfully. Ish, 170 Wn.2d at 193. The trial court allowed the State to "establish the terms of the agreement during direct examination, including its requirement that Otterson" testify truthfully. Ish, 170 Wn.2d at 193-94.

Otterson testified that Ish recalled details of the crime but that Ish said he would testify that he did not remember anything that happened while he beat Hall. Ish, 170 Wn.2d at 192-93. On direct examination of Otterson, the prosecutor referenced the agreement and its requirement that Otterson testify truthfully. Ish, 170 Wn.2d at 194. The State admitted Otterson's testimony as evidence of Ish's state of mind when he killed Hall, and Ish's defense at trial was that he had taken drugs and that those drugs, along with his bizarre behavior following the murder, demonstrated that he had not formed the required mental state for either crime. Ish, 170 Wn.2d at 192, 193.

Our Supreme Court concluded that "evidence that a witness has agreed to testify truthfully generally has little probative value and should not be admitted as part of the State's case in chief," i.e., during direct examination. Ish, 170 Wn.2d

at 198. However, it also held that if the defendant puts the credibility of the State's witness at issue on cross-examination, the State is entitled to point out that the witness agreed to testify truthfully, if the agreement contained such a promise. Ish, 170 Wn.2d at 198-99. The court concluded that the prosecutor's questioning on direct examination was improper. Ish, 170 Wn.2d at 199. However, it found no prejudice because the State presented additional evidence of Ish's mental state. Ish, 170 Wn.2d at 200.

Here, on direct examination, the prosecutor asked Sires, "Are you testifying truthfully?" Sires responded, "I am." The prosecutor's commentary regarding the truthful nature of the testimony was improper because, as described in Ish, when the defense has not put it at issue, bolstering the credibility of a State's witness during direct examination is improper vouching. See Thorgerson, 172 Wn.2d at 443 ("Whether a witness testifies truthfully is an issue entirely within the province of the trier of fact."). However, because Van Brackle did not object to the prosecutor's question of truthfulness, unlike in Ish, Van Brackle must show that the prosecutor's conduct was flagrant and ill intentioned or that the court could not have cured it with an instruction to the jury. He does not do so. In the context of the trial, the prosecutor appears to be taking a preemptive strike, anticipating Van Brackle's theory that Sires was lying. Accordingly, the conduct was not flagrant, and a jury instruction likely would have cured any prejudice that resulted.

Furthermore, Van Brackle cannot show prejudice. The State did not rely solely on Sires' testimony as evidence of Van Brackle's guilt, and Van Brackle

failed to satisfy his burden to prove that the instances of the conduct affected the jury's verdict. Thorgerson, 172 Wn.2d at 442-43. While Sires testified that Van Brackle went towards Curtis's home, he could not—and did not—testify that Van Brackle was the one that robbed Curtis at gunpoint. Indeed, as pointed out by Van Brackle's counsel below, the jury's essential determination was whether it believed Crawford or Curtis, not whether they believed Crawford or Sires. Like in Ish, the State presented substantial evidence, distinct from Sires' testimony, regarding the incident. In addition, unlike in Ish, Sires' testimony addressed only a part of the incident and not the robbery itself. Therefore, we conclude that Van Brackle's prosecutorial misconduct claim fails.

### Supervision Fees

Van Brackle asserts that the trial court improperly imposed supervision fees. We have recently held that supervision fees are discretionary and, where the trial court intended to impose mandatory fees only, remand to strike is proper. State v. Dillon, 12 Wn. App. 2d 133, 152-53, 456 P.3d 1199, review denied, 195 Wn.2d 1022 (2020). Here, the trial court found Van Brackle indigent. The trial court also stated that it would impose only mandatory fees. Therefore, the form language on Van Brackle's judgment and sentence requiring him to pay supervision fees was improper.

We affirm the conviction but remand to the trial court to strike the provision requiring Van Brackle to pay supervision fees.

_____

WE CONCUR: