# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In the Matter of the Personal Restraint of: | No. 55969-2-II |
| STEVEN BRUCE PERRA, | |
| Petitioner. | UNPUBLISHED OPINION |

LEE, J. — In this timely personal restraint petition (PRP), Steven B. Perra seeks relief from unlawful restraint following his convictions for numerous property crimes resulting from a series of thefts from a retail store. Perra raises multiple instances of ineffective assistance of counsel, prosecutorial misconduct, and issues related to a second photo montage referenced at trial. Perra also challenges the imposition of the $500 crime victim penalty assessment (CVPA).

Perra has failed to show he is entitled to relief from restraint related to his convictions. However, the State has no objection to remanding to the trial court to strike the CVPA. Accordingly, we deny Perra's PRP in part, grant Perra's PRP in part, and remand to the trial court to strike Perra's LFOs.

## FACTS

### A. BACKGROUND INFORMATION

The facts underlying Perra's convictions are described in the opinion in Perra's direct appeal:

> From fall of 2019 through spring of 2020, the same man entered a Chehalis [retail store] four times and stole over $10,000 in goods, mostly jewelry. Security cameras recorded each incident, and Sean Gabignaud, an asset protection employee, watched the footage and filed reports with the Chehalis Police

Department after each incident. Gabignaud recognized the same culprit in each video, but his identity was unknown.

In March of 2020, Officer Noel Shields received [the retail store's] report of a jewelry theft that had occurred on the 14th. The report included pictures of the man identified by Gabignaud as the culprit. Officer Jason Roberts happened to see the pictures and recognized the culprit as Steven Perra. Officer Shields requested a copy of Perra's driver's license from the Department of Licensing and, comparing the photos, concluded Perra was the man in the security footage. Officer Shields gave the name to Gabignaud, and he confirmed that Perra had been permanently trespassed, or prohibited, from [the retail store] since 2011.

The State charged Perra with four counts of second degree burglary, first degree organized retail theft, first degree theft, second degree theft, and two counts of third degree theft.

*State v. Perra*, No. 83418-5-I, slip op. at 2-3 (Wash. Ct. App. Mar. 21, 2022) (unpublished), *review denied*, 200 Wn.2d 1007 (2022) (*Perra* I).[1] A jury found Perra guilty of all the charges. *Id.* at 5. Perra appealed. *Id.*

On direct appeal, Division One of this court determined that two of the theft convictions merged with the organized retail theft conviction. *Id*. at 13. The State conceded that resentencing was required to strike certain discretionary legal financial obligations and to recalculate Perra's offender score following our Supreme Court's decision in *State v. Blake*.[2] *Id*. at 13-14. The court affirmed Perra's convictions and remanded for resentencing. *Id*. at 15.

Perra timely filed this PRP while his direct appeal was pending. A commissioner of this court denied Perra's motion to consolidate his PRP with his direct appeal and stayed consideration of this PRP until the direct appeal was decided. Consideration of this PRP was then stayed pending resentencing.[3] The stay was lifted in June 2023.

---

[1] https://www.courts.wa.gov/opinions/pdf/834185.pdf

[2] 197 Wn.2d 170, 481 P.3d 521 (2021).

[3] Perra was resentenced on May 26, 2023. *State v. Perra*, No. 58259-7-II, slip op. at 2 (Wash. Ct. App. July 30, 2024) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2058259-7-II%20Unpublished%20Opinion.pdf (*Perra* II). The resentencing court imposed the same 210-

B.    EVIDENCE REGARDING PHOTO MONTAGES

Gabignaud testified at trial that he reviewed videos of all four thefts on store surveillance video. Gabignaud identified Perra as the person he saw in the videos. All the videos were played during Gabignaud's testimony. Gabignaud provided all the information from his investigations to law enforcement. At some point, law enforcement provided Gabignaud with Perra's name. Gabignaud entered the name into the retail store's computer database and determined that Perra had been trespassed from the retail store. The trespass notice also included a photograph taken at the time the trespass notice was issued.

During cross-examination, Perra asked if law enforcement had ever contacted him to follow-up or get clarification on the reports that Gabignaud had submitted. Gabignaud said law enforcement had only contacted him to do a photo montage. When Perra asked when the photo montage occurred, Gabignaud stated that he remembered when he did the second photo montage but he did not remember when he did the first one. When asked again, Gabignaud confirmed he did two photo montages. Perra then asked to address the trial court without the jury present.

After the jury was excused, Perra explained he had only been made aware of one photo montage, not two. The State asserted that it also only knew of one photo montage. The trial court took a recess for the parties to figure out whether there was a second photo montage. When the parties returned, the State represented that none of the officers involved showed Gabignaud a photo montage other than the one that they already had record of. Perra asked for a mistrial because Gabignaud maintained that there were two photo montages. However, when questioned further, Gabignaud admitted that he could be thinking about running the name he was given through the

month exceptional sentence that had originally been imposed. *Id*. The resentencing court also imposed a $500 CVPA. Perra appealed, and this court affirmed his sentence. *Id*. at 2, 8.

database as the first photo montage. Perra argued it was also problematic if Gabignaud looked up Perra's photo prior to doing the photo montage.

The trial court denied the motion for a mistrial and asked the parties if they had any suggestions about further addressing the issue. Perra argued that a photo montage viewed after Gabignaud had already pulled up a picture of Perra from the computer database was invalid. The State agreed and stated that is no longer intended to introduce the identification from the photo montage at trial. Ultimately, both parties agreed not to make any further references to any photo montages.

C.      THE STATE'S CLOSING ARGUMENT

The State began closing argument by reviewing all the charges and then reviewing the different elements of each charge. The State then played portions of the store surveillance videos that were admitted at trial. While playing the first video the State made the following argument:

> So here we see Mr. Perra entering the building, grabbing a cart. Then another view of Mr. Perra. Now, be cognizant of how he hides his hands.
> We see he's grabbed a few items off the shelf. They're in his cart. And he makes his way to electronic aisle where he is going to find his PlayStation 4.
> But watch his actions. Very I guess skittish would be the word. Looking around to see what's going on. Not once do we see him ask anyone for help.
> And then you see he removes something from his pocket there with his right hand. And it's not like he's looking at anything on the shelf; in fact, it looks like he's looking around for employees or somebody that may catch him for what he's about to do.
> And I don't know if you saw, but on his left hand you can see—at least I believe you can see the tattoo. Now, you-all will be able to take a look for yourself to determine if it's there.
> Now, watch the shelf on the end. At one time he gets so violent that the entire shelf shakes as he's trying to get into it to get his PlayStation 4.
>
> . . . .
>
> He leaves, then he comes back around up top. You'll see him entering the top of the video again. And, again, we've cut some of the dead time out of this. And he was able to get it open and there's his [PlayStation 4], closes the door to hide his tracks a little bit.

4

And then you'll notice he doesn't come out immediately. He steps out to look both ways, to see who's looking, see who's coming.

You can see the [PlayStation 4] is still at the bottom of his cart there. And then when he exits that area, [PlayStation 4] box is gone and the fan box is present.

2 Verbatim Rep. of Proc. (Oct 20, 2020) at 444-46. The State then argued how each of the elements of the burglary and theft charges for this incident were satisfied. The State also argued the evidence it believed proved that the person in the video was Perra.

The State then played the surveillance video showing the second, third, and fourth incidents accompanied with similar argument describing what the State believed the video showed. After showing each video, the State explicitly went through each element for the charges associated with that incident. Defense counsel did not object during the State's closing argument.

D.      DIRECT APPEAL ADDRESSING INEFFECTIVE ASSISTANCE OF COUNSEL

During trial, defense counsel asked to speak to the court without the State present. *Perra I*, at 4. Defense counsel raised concerns because he believed that Perra and his son were planning on providing false testimony at trial. *Id*. at 4-5. The trial court ruled that Perra and his son could testify, but defense counsel would not be required to do more than call them to the stand and ask them to tell their version of events. *Id*. at 5.

In his direct appeal, Perra argued that he received ineffective assistance of counsel because defense counsel was deficient for declining to assist with introducing false testimony. *Id.* at 1, 7. Division One of this court rejected Perra's ineffective assistance of counsel claim, explaining:

After the State presented its case-in-chief, defense counsel asked for a hearing without the State present in order to discuss an issue involving RPC 3.3(a)(4), which prohibits a lawyer from "knowingly. . .offer[ing] evidence that the lawyer knows to be false." Defense counsel, after Perra consented to him doing so, recounted a pretrial conversation in which Perra admitted committing the alleged crimes due to drug addiction. In the same conversation, Perra also admitted that he was captured by a security camera while committing at least one theft. Perra, however, intended to testify that he was in Texas when the crimes were committed and that he was not the man in the security camera footage.

5

On appeal, Perra does not argue defense counsel lacked a reasonable basis to conclude he would present false testimony. "[A] defendant has no legitimate interest that conflicts with his or her attorney's obligation not to tolerate perjury and to adhere to the Rules of Professional Conduct." RPC 3.3(a)(4) prohibits an attorney from presenting evidence that they know is false. RPC 3.3(e) lets an attorney "refuse to offer evidence that the lawyer reasonably believes is false." Every attorney has a "special duty . . . to prevent and disclose frauds upon the court." Thus, an attorney's duty of loyalty "is limited to legitimate, lawful conduct" and does not require "taking steps or in any way assisting the client in presenting false evidence." Because Perra fails to demonstrate an actual conflict between himself and defense counsel, Perra fails to demonstrate ineffective assistance.

*Id.* at 8-9 (alterations in original) (footnotes omitted).

E.     CURRENT PRP AND SUPPORTING EVIDENCE

Perra timely filed the current PRP. The only evidence Perra submitted to support his PRP, besides the record in his direct appeal, was Perra's own declaration which states, in relevant part:

9.      I tried to tell my current court appointed attorney that I had a[n] alibi on my charges and to conflict any hope of coming to my defense he said I somehow [w]as going to perjure myself and that my son, [K.P.] was going to commit perjury, thus, used this excuse to concede my case to the State.

. . . .

11.     Trial counsel never represented me while I was on the stand or prepared me for taking the stand.

12.     Trial counsel never represented me by questioning my witness, i.e. my son while he testified.

. . . .

18.     My trial counsel Don Blair, appointed counsel, said I admitted guilt to him at a brief pretrial meeting when he was trying to convince me to plead guilty. This is what a hearing would warrant the nexpin [sic] for Ineffective Assistance of Counsel claim and also extend to the Trial JUDGE's decision not to grant me to extend trial so my paid retained counsel could effectively represent me.

PRP at 54-55.

ANALYSIS

In this PRP, Perra argues that the State committed prosecutorial misconduct during closing argument, there were several issues related to the alleged second photo montage, and he received ineffective assistance of counsel. Perra also argues that the CVPA should be stricken from his judgment and sentence.

A.     LEGAL PRINCIPLES

A petitioner may request relief through a PRP if they are under unlawful restraint. RAP 16.4(a)-(c). When reviewing a PRP, we may grant, deny, or remand for a reference hearing. *In re Pers. Restraint of Schreiber*, 189 Wn. App. 110, 113, 357 P.3d 668 (2015).

Because collateral relief is an extraordinary remedy that seeks to disturb a final judgment, the petitioner must meet a high standard to obtain relief. *In re Pers. Restraint of Kennedy*, 200 Wn.2d 1, 12, 513 P.3d 769 (2022). A petitioner must establish by a preponderance of the evidence either a constitutional error that has resulted in actual and substantial prejudice, or a nonconstitutional error that constitutes a fundamental defect resulting in a complete miscarriage of justice. *In re Pers. Restraint of Dove*, 196 Wn. App. 148, 154, 381 P.3d 1280 (2016), *review denied*, 188 Wn.2d 1008 (2017). Further, "[f]actual evidence, rather than conclusory allegations, must be offered in support of a PRP." *In re Pers. Restraint of Williams*, 198 Wn.2d 342, 352, 496 P.3d 289 (2021); RAP 16.7(a)(2)(i). A petitioner may not renew issues raised and rejected on direct appeal, "unless the interests of justice require the issue's relitigation." *Schreiber*, 189 Wn. App. at 113.

B.     PROSECUTORIAL MISCONDUCT

Perra argues that the prosecutor committed prosecutorial misconduct during closing argument. We disagree.

To prevail on a claim of prosecutorial misconduct, the petitioner must establish both improper conduct and prejudicial effect. *In re Pers. Restraint of Richmond*, 16 Wn. App. 2d 751, 754, 482 P.3d 971 (2021). We first determine if the State's conduct was improper. *Id*. at 754. If the conduct was improper, we then assess whether the improper conduct prejudiced the defendant. *State v. Emery*, 174 Wn.2d 741, 760, 278 P.3d 653 (2012).

It is improper for a prosecutor to make arguments or introduce evidence calculated to inflame the passions or prejudices of the jury. *In re Pers. Restraint of Glasmann*, 175 Wn.2d 696, 704, 286 P.3d 673 (2012) (lead opinion). However, the State is allowed wide latitude in closing argument to argue reasonable inferences from the evidence, "including evidence respecting the credibility of witnesses." *State v. Thorgerson*, 172 Wn.2d 438, 448, 258 P.3d 43 (2011). Furthermore, "[d]eference is . . . owed to the trial court's ability to oversee the administration of justice, defense counsel's judgment about whether an objection was worth raising, and a jury's ability to independently assess the merits of the case." *Richmond*, 16 Wn. App. 2d at 754.

Here, the prosecutor presented the surveillance videos during closing argument while making reasonable inferences based on what the surveillance videos were depicting. *Thorgerson*, 172 Wn.2d at 448. The prosecutor based its entire closing argument on a review of the evidence and how it relates to the essential elements of each crime charged. The prosecutor did not appeal to the passions and prejudices of the jury; rather, the prosecutor presented reasonable inferences from the surveillance video evidence. *See Glasmann*, 175 Wn.2d at 704 (improper to make arguments calculated to inflame passions and prejudices of the jury). Further, because the prosecutor's comments accompanied the video, the jury was capable of independently assessing whether the prosecutor's argument accurately reflected the surveillance video. *Richmond*, 16 Wn. App. 2d at 754. The prosecutor did not engage in any improper conduct during closing argument.

Because Perra has failed to show that the prosecutor engaged in any improper conduct during closing argument, the prosecutorial misconduct claim fails.

C.    INEFFECTIVE ASSISTANCE OF COUNSEL

Perra argues he received ineffective assistance of counsel based on defense counsel's failure to object to the State's improper conduct during closing argument and he received ineffective assistance of appellate counsel because appellate counsel failed to raise prosecutorial misconduct on direct appeal. For the reasons discussed above, the State did not engage in any improper conduct; therefore, there was no basis for defense counsel to object nor a meritorious issue for appellate counsel to raise. Accordingly, Perra's claims of ineffective assistance of counsel and ineffective assistance of appellate counsel related to the alleged prosecutorial misconduct fail.

Perra also argues multiple other instances of ineffective assistance of counsel, all of which are based on defense counsel's belief that Perra and his son were going to present perjured testimony. Essentially, Perra argues that defense counsel completely abandoned Perra's defense because defense counsel believed Perra committed perjury. Perra further argues that he received ineffective assistance because he was without the assistance of counsel during his testimony. Because Perra does not establish that the interests of justice require relitigation of issues regarding whether defense counsel's performance was deficient for declining to assist with presenting false testimony, Perra may not renew this issue in his PRP.

On direct appeal, Perra argued that he received ineffective assistance of counsel because counsel was deficient for failing to assist with presenting false testimony. *Perra* I, at 7. Although the issue appeared to be framed as whether defense counsel's refusal to assist with presenting false testimony created an actual conflict between Perra and defense counsel, the underlying issue was

still whether defense counsel was deficient for declining to assist in presenting false testimony. *Id*. at 8-9. The same issue is underlying the claims Perra raises in his PRP. Therefore, Perra may only renew these issues if he shows the interests of justice require their relitigation. *Schreiber*, 189 Wn. App. at 113.

Here, Perra does not provide any evidence that show the interests of justice require relitigation of the issue of whether defense counsel was deficient for declining to assist with presenting false testimony. At best, Perra's declaration contains conclusory allegations that defense counsel had no reason to believe he was offering false testimony, which is insufficient to support a claim in a PRP. *Williams*, 198 Wn.2d at 352. There is no evidence regarding the conversation that lead to defense counsel's belief that Perra was going to offer false testimony or evidence from defense counsel regarding the reasons why he believed that Perra was going to present false testimony that was not already considered as part of Perra's direct appeal. Without any new evidence to consider, Perra cannot show that the interests of justice require relitigation of whether defense counsel was deficient for declining to assist in presenting false testimony. Accordingly, Perra may not renew his claims of ineffective assistance of counsel in this PRP. [4]

D.      PHOTO MONTAGE

Perra raises several issues related to Gabignaud's testimony that there were two photo montages. Because Perra cannot show prejudice, he is not entitled to relief.

---

[4] Perra requests that we order a reference hearing to develop the factual allegations underlying his claims related to counsel's deficient performance. A reference hearing is appropriate when a petitioner makes a prima facie showing that they are entitled to relief, but the merits of petitioner's contentions cannot be determined solely on the record. *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 18, 296 P.3d 872 (2013). However, because Perra has failed to establish that he may renew his ineffective assistance of counsel claim in this PRP, he cannot make a prima facie showing that he would be entitled to relief. Accordingly, Perra is not entitled to a reference hearing.

Perra claims there are several issues related to Gabignaud's testimony that there were two photo montages including surprise and suggestive identification. However, even if we considered this a constitutional error,[5] Perra would have to establish actual and substantial prejudice. *Dove*, 196 Wn. App. at 154.

Here, Gabignaud testified that he reviewed two photo montages. The existence of two photo montages was disputed because law enforcement had a record of only one photo montage and Gabignaud admitted he may have been remembering his search of the computer database as a photo montage. However, there was no testimony that Gabignaud identified Perra in any photo montage. And following Gabignaud's testimony, the parties agreed that there would be no further mention of photo montages. Further, because the jury had surveillance video of all the thefts and could observe Perra, the jury was capable of determining whether Perra was the person in the video. Therefore, Perra cannot show that the isolated reference to two photo montages, without any indication that Perra was identified in the photo montages, resulted in any actual and substantial prejudice. Accordingly, Perra's claim that he is entitled to relief because of issues related to Gabignaud's testimony that there were two photo montages fails.

E.  CVPA

Finally, Perra challenges the imposition of the $500 CVPA. The State does not object to striking the CVPA.

---

[5] Although evidentiary errors are generally nonconstitutional errors, the due process clause of the Fourteenth Amendment to the United States Constitution requires the exclusion of identifications that were "obtained by an unnecessarily suggestive police procedure" and that lack "reliability under the totality of circumstances." *State v. Derri*, 199 Wn.2d 658, 673, 511 P.3d 1267 (2022). Because one of Perra's arguments is that conducting two photo montages was unnecessarily suggestive, we apply the constitutional error standard.

Under RCW 7.68.035(4), courts may not impose the CVPA on indigent defendants. And the State does not object to striking the CVPA from Perra's judgment and sentence. Therefore, we grant Perra's PRP in part based on the challenge to the imposition of the CVPA.

CONCLUSION

Perra fails to establish that he is entitled to relief from restraint due to prosecutorial misconduct, ineffective assistance of counsel, or issues related to Gabignaud's testimony that there were two photo montages. The State does not object to striking the CVPA from Perra's judgment and sentence. Accordingly, we deny Perra's petition in part, grant it in part, and remand to the trial court to strike the CVPA from Perra's judgment and sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Veljacic, A.C.J.

_____
Che, J.