**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>    Respondent,<br><br>v.<br><br>MONTE TYSON PAYNE,<br><br>    Appellant. | No. 85525-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

MANN, J. — Monte Payne appeals his conviction for possession of heroin with the intent to deliver. Payne argues the prosecutor committed misconduct during voir dire. Payne also challenges a community custody condition and the $500 victim penalty assessment (VPA). We remand to strike the challenged community custody condition and the VPA. We otherwise affirm.

I

In June 2019, Bellingham police observed a vehicle changing lanes to make a right turn and failing to signal the lane change. Police stopped the vehicle and identified the driver as Payne. Police also observed Payne placing items under the steering column. After learning Payne's license was suspended, police arrested Payne and read

him Miranda[1] warnings. Payne consented to a search of his car. The search produced multiple hypodermic needles, a baggy containing a large lump of heroin, a scale with heroin residue on it, a baggy containing methamphetamine, a lump of methamphetamine, several hundred dollars, tin foil, empty unused baggies, butane torches, medical tubing, a glass pipe, and a police radio scanner.

Payne was charged with one count of possession of heroin with intent to deliver, one count of possession of methamphetamine with intent to deliver, and driving with a suspended license in the third degree. The charge for driving with a suspended license was later dropped. At the conclusion of the State's case, Payne successfully moved to dismiss the methamphetamine charge.

The jury found Payne guilty of possession of heroin with the intent to deliver. Payne was sentenced to 24 months in community custody. The trial court imposed community custody conditions including the prohibition: "do not enter drug zones." Payne was also ordered to pay a $500 VPA.

Payne appeals.

II

Payne argues the prosecutor committed flagrant and ill-intentioned misconduct during voir dire by making multiple references to the "war on drugs." Payne relies on State v. Loughbom, 196 Wn.2d 64, 470 P.3d 499 (2020). Payne also relies on State v. Zamora, 199 Wn.2d 698, 512 P.3d 512 (2022), and argues that the State politicized the trial on a controversial and emotional issue.

---

[1] Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

In contrast, the State argues that the questions asked during voir dire were neutral and made to discover any basis for challenge for cause or to exercise a peremptory challenge. We agree with the State.

"We presume prosecutors act impartially 'in the interest of justice.'" Loughbom, 196 Wn.2d at 69 (quoting State v. Thorgerson, 172 Wn.2d 438, 443, 258 P.3d 43 (2011)). "At the same time, we expect prosecutors to 'subdue courtroom zeal, not to add to it, in order to ensure the defendant receives a fair trial.'" Loughbom, 196 Wn.2d at 69 (quoting State v. Walker, 182 Wn.2d 463, 477, 341 P.3d 976 (2015)).

To prevail on a claim of prosecutorial misconduct, the defendant must show that the prosecuting attorney's conduct was both improper and prejudicial. State v. Weber, 159 Wn.2d 252, 270, 149 P.3d 646 (2006). If the defendant did not object at trial—as is the case here—the issue is waived unless the "prosecutor's misconduct was so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." State v. Emery, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). Under this heightened standard, the defendant must show that (1) "'no curative instruction would have obviated any prejudicial effect on the jury'" and (2) the misconduct resulted in prejudice that "'had a substantial likelihood of affecting the jury verdict.'" Emery, 174 Wn.2d at 761 (quoting Thorgerson, 172 Wn.2d at 455).

In Loughbom, Loughbom was charged with various drug crimes including delivery of controlled substance methamphetamine. During voir dire, the prosecutor asked whether any jurors believed there was a drug problem in the county. Loughbom, 196 Wn.2d at 67-68. The prosecutor made three references to the "ongoing war on drugs" during opening statements, rebuttal arguments, and closing arguments

throughout the one-day trial. 196 Wn.2d at 70. Our Supreme Court rejected the "war on drugs rhetoric," and concluded that the "prosecutor's improper framing of Loughbom's prosecution as representing the war on drugs, and his reinforcing of this theme throughout, caused incurable prejudice." Loughbom, 196 Wn.2d at 75. The court held that the repetitive misconduct had a cumulative effect:

> By the time the prosecutor framed Loughbom's trial as representing "yet another battle in the ongoing war on drugs" in his opening statement, he had already primed the jury to view Loughbom's prosecution through this prism by raising the specter of the "drug problem in Lincoln County" during jury selection. Furthermore, two of the three references to the war on drugs were made in closing, and by that point it would have been too late to negate the prejudice that built up over the course of the single-day trial.

Loughbom, 196 Wn.2d at 77. The court declined to "decide whether a single, inadvertent reference to the war on drugs during a longer trial would require reversal in the context of the total argument." Loughbom, 196 Wn.2d at 77.

In Zamora, our Supreme Court concluded that the prosecutor committed race-based misconduct under the analysis established in State v. Monday, 171 Wn.2d 667, 257 P.3d 551 (2011), because the prosecutor posed irrelevant questions to jurors during voir dire about border security and immigration and connected those questions to crime and drugs. Zamora, 199 Wn.2d at 720-21. The court explained that "what occurs during voir dire is equally as important as what occurs during trial proceedings," and that when race-based misconduct occurs during such a significant aspect of trial, "the jury becomes infected in untraceable ways." Zamora, 199 Wn.2d at 712.

Here, Payne has not alleged race-based misconduct so we do not use the standard established in Monday. Instead, Payne must show the prosecutor's conduct

was so flagrant and ill intentioned that no instruction could have cured any resulting prejudice.

Payne points to several instances of the prosecutor's questions to potential jurors about their thoughts on federal drug enforcement and the war on drugs, including:

> The war on drugs, does anybody believe that we've lost the war on drugs, and perhaps we should scale back federal enforcement of what the DEA is doing or otherwise by a show of hands?
>
> . . . .
>
> Juror Number 36, can you tell me about how you personally stand on the war on drugs?
>
> . . . .
>
> Juror Number 20 . . . what is your view on the war on drugs?  Do you think, are you okay with the status quo?  Do you think that federal enforcement should be more stringent, scaled back?
>
> . . . .
>
> Juror Number 28, can you tell me a little bit about kind of where you stand in this conversation on, you know, enforcement of drug trafficking laws and the war on drugs?

The prosecutor's use of the war on drugs was limited to voir dire.  Unlike Loughbom, the prosecutor did not reference drug problems in any specific locations, in the county, or connect the war on drugs to Payne's case as "another battle."  And the prosecutor did not use war on drugs rhetoric during opening statements or closing arguments.  Payne asserts that under Zamora, the holding in Loughbom is not confined to its facts and that misconduct that occurs only during voir dire, as it did here, warrants reversal.  But the prosecutor posed questions to jurors to discern beliefs on drug enforcement in general.  Such questions are not analogous to the specific and persistent characterization of the war on drugs that occurred in Loughbom where the prosecutor connected the war on drugs to the locality, the community, and the crime

charged. There were no such cumulative effects in this case. Nor does the record reflect the same irrelevant questions and implicit misconduct shown in Zamora.

Payne fails to establish that the prosecutor's questions about the war on drugs were so flagrant and ill intentioned that an instruction could not have cured any resulting prejudice.

### III

Payne argues the community custody condition that orders "do not enter drug zones" is unconstitutionally vague.

A community custody condition is unconstitutionally vague when it (1) fails to reasonably inform a person of ordinary intelligence what behavior is prohibited, (2) fails to provide explicit standards to prevent arbitrary and discriminatory application, or (3) places constraints on the exercise of basic First Amendment rights and leaves individuals unsure of how to comply. State v. Padilla, 190 Wn.2d 672, 679, 416 P.3d 712 (2018).

The State acknowledges that the community custody condition does not provide enough specificity for a person to reasonably know what conduct is prohibited and concedes the condition should be stricken.

We accept the State's concession and remand to strike the community custody condition.

### IV

Payne argues that remand is necessary to strike the $500 VPA. The State does not dispute Payne's indigency and does not oppose remand to strike the VPA.

In 2023, the legislature added a subsection to RCW 7.68.035 that prohibits courts from imposing a VPA on indigent defendants. LAWS OF 2023, ch. 449, § 1. Recent amendments to statutes governing legal financial obligations apply retroactively to matters pending on direct appeal. State v. Ellis, 27 Wn. App. 2d 1, 16, 530 P.3d 1048 (2023). We accept the State's concession.

We remand to strike the challenged community custody condition and the VPA. We otherwise affirm.

Mann, J.

WE CONCUR:

Feldman, J.                    Coburn, J.