# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

STATE of WASHINGTON,

                Respondent,

        v.

AHMED HASSAN OSMAN,

                Appellant.

No. 86206-5-I

ORDER DENYING MOTION FOR RECONSIDERATION AND WITHDRAWING AND SUBSTITUTING OPINION

The appellant, Ahmed Osman, has filed a motion for reconsideration of the opinion filed on September 22, 2025, and the State has filed a response. The court has determined that the motion should be denied, but the opinion should be withdrawn, and a substitute opinion filed; now, therefore, it is hereby

ORDERED that the motion for reconsideration is denied; and it is further

ORDERED that the opinion filed on September 22, 2025 is withdrawn; and it is further

ORDERED that a substitute unpublished opinion shall be filed.

_____ Feldman, J.

_____ Coburn, J.

_____, ACJ

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

FILED
10/27/2025
Court of Appeals
Division I
State of Washington

STATE of WASHINGTON,

               Respondent,

      v.

AHMED HASSAN OSMAN,

               Appellant.

No. 86206-5-I

DIVISION ONE

UNPUBLISHED OPINION

FELDMAN, J. — Ahmed Hassan Osman appeals his convictions for murder in the first degree and assault in the second degree, both with deadly weapon enhancements. He argues he is entitled to a new trial due to instructional error, ineffective assistance of counsel, and prosecutorial misconduct. We remand for the trial court to make an indigency determination and consider whether to strike the victim penalty assessment and waive interest on restitution. In all other respects, we affirm.

I

Osman stabbed and killed Nyaruot Chuol and attempted to stab her friend, Nyaruot Both, after they trashed his apartment and stole his personal property.

The night began when Osman and his acquaintance, "Aziz,"[1] decided to have a party at Osman's apartment after plans to meet up with some women that night fell through. Osman invited his new friend Both, who refused to attend without her childhood friend Chuol.

The party included loud music, food, alcohol, and marijuana. At one point during the party, Osman retrieved his handgun and AR-15 to "demo" the firearms for his guests. During the demo, Both placed the handgun's holster around her waist where it remained for the rest of the evening. The group continued drinking through the early hours of the morning and Chuol in particular became intoxicated.

There is conflicting evidence about what happened next. Osman testified he asked the women to leave, and he attempted to call the police when they refused to do so. Osman testified that he was unable to complete the call because the women attacked him, called him a "snitch" for involving law enforcement, and kept his phone to prevent him from completing future calls. Both offered a different account and testified that Osman became angry with Chuol when she refused to sleep in his bedroom instead of on the couch, they began arguing, and Osman then slapped Chuol.

It is undisputed that Chuol and Both began "trashing" Osman's apartment after the physical altercation—breaking dishes, damaging his TV and laptop, overturning furniture, and otherwise damaging Osman's personal property. Both

---

[1] Aziz's last name is not in the record. He was not interviewed by police, nor did he testify at trial. Security footage and other evidence at trial indicates he left the building before the stabbing occurred.

testified that Chuol told Osman they were going to tell all their cousins to kill Osman and beat him up.

Both also testified that Osman demanded the women "get out" and brandished his handgun at them. Osman put the gun down and retreated to his bedroom, and Both took the gun and slipped it into the holster she was already wearing. Chuol and Both then left the apartment, taking Osman's wallet, handgun, and phone with them. Osman chased them into the hallway, brandishing a knife. The women responded by yelling at Osman and shoving him back in the direction of his apartment. Osman testified Both pointed the handgun at him and told him her cousins were going to come kill him.

Chuol and Both summoned the elevator again, got on it, and left Osman's floor. They noticed Chuol's phone was missing and went to Osman's car to see if it was there. From outside, they taunted Osman with his stolen property as he watched them from the window. Osman tried to call 911 through Google Assistant since he no longer had a phone, but was unsuccessful. Chuol and Both returned to the building because Chuol's phone was not in Osman's car. A neighbor who lived on Osman's floor, Trevor Davis, let them into the secure building.

Davis then rode the elevator with Chuol and Both to the second floor and walked back to his apartment, which was down the hallway on the opposite side of the elevator from Osman's apartment. Davis testified that, from his apartment, he could hear the group arguing in the hallway and so he left his apartment to complain about the noise. According to Davis, Osman told him that the women destroyed his property but did not ask him to call the police. Davis did not hear the

women threaten Osman with any future violence, nor did Osman indicate he feared Both because she possessed his handgun.  Davis then returned to his apartment.

Evidence in the record suggests Chuol and Both separately reentered Osman's apartment to look for Chuol's missing phone.  According to Osman's testimony, "that's when they're yelling threats.  Ms. Both is on her phone and they're both yelling, 'You're fucking dead. We're going to fucking kill you.  Our cousins are going to kill you.'"  Unsuccessful in the search for her phone, Chuol stole Osman's  apartment keys on her way out of Osman's apartment.  Chuol and Both then walked toward, and summoned, the elevator.  Security footage shows Osman walk toward the women with a knife concealed behind his back.  As Chuol stepped into the waiting elevator, Osman stabbed her in the abdomen.  Osman then slashed at Both, narrowly missing her, and followed her, shouting, as she fled down the hallway.

After chasing Both down the hallway, Osman returned to Chuol, who was seated on the ground motionless, lifted her by her hair, and stabbed her in the back.  He then chased after Both again before returning to Chuol to stab her a third time as she lay face down on the ground partway into the elevator.  He then returned to his apartment.  Both attempted to help Chuol and called 911.  When police arrived, Chuol was declared dead at the scene.

Osman was charged with first degree murder of Chuol and second degree assault of Both.  A jury found him guilty of these counts with deadly weapon enhancements.  The court subsequently imposed a victim penalty assessment of $500 and interest on restitution.  Osman appeals.

II

Osman argues the trial court erred when it refused to instruct the jury on justifiable homicide in resisting a felony. We disagree.

RCW 9A.16.050(2) provides, "Homicide is . . . justifiable when committed . . . [i]n the actual resistance of an attempt to commit a felony upon the slayer, in his or her presence, or upon or in a dwelling, or other place of abode, in which he or she is." WPIC[2] 16.03 provides the pattern instruction for this defense. It states in relevant part:

> It is a defense to a charge of [murder] that the homicide was justifiable as defined in this instruction.
>
> Homicide is justifiable when committed in the actual resistance of an attempt to commit a felony [upon the slayer] [in the presence of the slayer] [or] [upon or in a dwelling or other place of abode in which the slayer is present].
>
> The slayer may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they reasonably appeared to the slayer, taking into consideration all the facts and circumstances as they appeared to [him] at the time [and prior to] the incident . . . .

Citing *State v. Brightman*, 155 Wn.2d 506, 122 P.3d 150 (2005), the trial court refused to give the instruction, explaining "this cannot be considered as reasonably necessary when I look at the statute [RCW] 9A.16.05[0](2) and when I look at what justifiable homicide is supposed to be as that is defined by the statute by the case law."

"A defendant is entitled to an instruction on justifiable homicide when he or she has raised some credible evidence, from whatever source, to establish that

---

[2] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 16.03, at 267 (5th ed. 2021).

the killing occurred in circumstances that meet the requirements of RCW 9A.16.050." *Brightman*, 155 Wn.2d at 520. "The trial court must view the evidence from the standpoint of a 'reasonably prudent person who knows all the defendant knows and sees all the defendant sees.'" *Id.* (quoting *State v. Read*, 147 Wn.2d 238, 242, 53 P.3d 26 (2002)). "If no credible evidence appears on the record to support a claim of justifiable homicide, then the trial court must refuse to give a justifiable homicide instruction." *Id.* The trial court must also "evaluate whether the force used by the slayer was *reasonably necessary.*" *Id*. at 521. "A justifiable homicide instruction based on . . . [RCW 9A.16].050(2) depends upon a showing that the use of deadly force was *necessary under the circumstances."* *Id.* at 523.

Here, Osman did not make an evidentiary showing that the use of deadly force was necessary in "actual resistance of an attempt to commit a felony upon the slayer, in his or her presence, or upon or in a dwelling, or other place of abode, in which he or she is." RCW 9A.16.050(2). The surveillance video does not permit any such showing. It shows that when Osman advanced on Chuol and Both and stabbed Chuol and attempted to stab Both, the women had left his apartment and were waiting for the elevator. While Osman emphasizes that Chuol and Both had previously threatened him, they were not threatening his life or great bodily harm after they last left his apartment. Nor is there any evidence Osman was attempting to restore the property that Chuol and Both took from him; he instead testified only that he was afraid of the women in that moment.[3] And neither walked toward him;

---

[3] Osman testified that he was "terrified" and "trapped" in his home, was "cornered" with "no way out," and "grabbed the knife" "for protection" in the moments immediately prior to stabbing Chuol. He did not testify as to any intent to regain his property or stop the women from leaving for the purposes of getting his phone, wallet, gun, or keys back when he went into the hallway for the last time.

to the contrary, Chuol was stepping into the elevator away from Osman when he stabbed her. Neither reached for a weapon or gestured at him. Because Osman made no showing the women posed a risk to him when he stabbed Chuol and attempted to stab Both, we conclude that the trial court correctly refused to give an instruction on justifiable homicide in resistance of a felony in this case.

Osman likens his case to *State v. Douglas*, 128 Wn. App. 555, 116 P.3d 1012 (2005). The comparison is inapt. In *Douglas*, "uncontroverted facts" established a house guest refused to leave and instead "remained unlawfully in the Douglases' home with intent to commit a felony" and then assaulted Douglas before Douglas killed him. *Id.* at 568. Division Two concluded, "because the evidence supported [Douglas's self-defense] theory, the trial court committed reversible error in refusing to give Douglas's proposed jury instruction on justifiable homicide [in resistance to a felony]." *Id.* The evidence in this case, unlike in *Douglas,* did not establish that Chuol remained unlawfully in Osman's home with the intent to commit crimes against him. To the contrary, the record (including the surveillance video) establishes she had *left* his apartment and was attempting to enter the elevator when Osman stabbed her. On this record, *Douglas* is inapposite.

Nor does *State v. Slert*, noted at 128 Wn. App. 1069 (2005), an unpublished opinion cited by Osman in a statement of additional grounds, support his argument on this issue. *Slert* found reversible error where the trial court rejected Slert's proposed instruction on justifiable homicide in resistance of a felony because Slert produced "evidence to establish the killing occurred in circumstances amounting to defense of life." *Id.* at *3. Slert testified the slain man attacked him immediately

prior to his use of deadly force, and evidence supported such a theory because Slert was covered with blood and evidence on the ground indicated a fight occurred. *Id.* Unlike *Slert*, Osman did not make an evidentiary showing Chuol attacked him immediately prior to when he used deadly force or threatened him such that deadly force was necessary under the circumstances. Like *Douglas*, *Slert* does not require reversal here.

III

Osman next argues he is entitled to a new trial because he was denied his right to effective assistance of counsel. We disagree.

"To demonstrate ineffective assistance of counsel, a defendant must make two showings." *State v. Vazquez*, 198 Wn.2d 239, 247, 494 P.3d 424 (2021). First, the defendant must show that "defense counsel's representation was deficient, i.e., it fell below an objective standard of reasonableness based on consideration of all the circumstances." *Id*. at 247-48. Second, the defendant must show that "defense counsel's deficient representation prejudiced the defendant, i.e., there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 248. "A defendant must *affirmatively prove* prejudice, not simply show that 'the errors had some conceivable effect on the outcome.'" *State v. Crawford*, 159 Wn.2d 86, 99, 147 P.3d 1288 (2006) (quoting *Strickland v. Washington*, 466 U.S. 668, 693 (1984)). This "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. "Failure to establish either prong of the test is fatal to an ineffective assistance claim." *State v. Arumugam*, 30 Wn. App. 2d 411, 433, 545 P.3d 363 (2024).

Osman argues he was denied his right to effective assistance of counsel in two respects, the first of which is that his lawyers "proposed a defective justifiable homicide instruction." The trial court instructed the jury, "Homicide is justifiable when committed in the lawful defense of the slayer when . . . the slayer reasonably believed that the person slain intended to inflict death or great personal injury . . . ." Osman argues the instruction should have stated: Homicide is justifiable when committed in the lawful defense of the slayer when . . . the slayer reasonably believed that the person slain *or others whom the defendant reasonably believed were acting in concert with the person slain* intended to inflict death or great personal injury. When defense counsel submitted this proposed instruction, they failed to include the italicized text, which is set forth in brackets in WPIC 16.02 to be used "as applicable." 11 WPIC 16.02 note on use at 261.

Even if Osman could establish the first prong of the ineffective assistance of counsel test with regard to this alleged deficiency, he cannot establish prejudice. Because the slaying was captured on video, there is overwhelming evidence Osman could not have reasonably believed that either woman, whether acting in concert with each other or not, intended to inflict death or great personal injury on him as they waited for the elevator and attempted to leave. Because neither Chuol nor Both posed any threat to Osman at that time, Osman cannot affirmatively prove the outcome of his trial would have been different if his lawyers had included the phrase "or others whom the defendant reasonably believed were acting in concert with the person slain" in the jury instruction for justified homicide in self-defense. Thus, Osman's first ineffective assistance of argument fails on the prejudice prong.

Next, Osman argues he was denied his right to effective assistance of counsel when his lawyers failed to include a definition of the term "necessary" in the jury instructions pertaining to the assault in the second degree charge. 11 WPIC 16.05 at 272 defines "necessary" as "no reasonably effective alternative to the use of force appeared to exist." Defense counsel initially proposed an instruction defining "necessary" based on WPIC 16.05. The State did not object. After argument regarding the jury instructions, the trial court asked the State to finalize the instructions by incorporating all changes discussed. The State did so, but omitted the instruction defining "necessary." Osman's lawyers were then asked whether there were any exceptions to the State's final instructions and failed to identify or object to the omitted instruction.

As with his first ineffective assistance of counsel argument, Osman cannot establish prejudice. In the absence of the instruction defining "necessary" in accordance with WPIC 16.05, the jury would have relied on the ordinary meaning of the term, which is: "that cannot be done without: that must be done or had: absolutely required: ESSENTIAL, INDISPENSABLE." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1511 (1993). The difference between this definition and WPIC 16.05 is immaterial here, as a reasonable juror would conclude based on the evidence at trial (including the surveillance video) that Osman used force that was more than necessary under any definition of the word because *no* force was necessary at all. Yet Osman advanced toward Chuol and Both while they were waiting for the elevator and attacked them with a knife. Accordingly, Osman cannot show there was a reasonable probability that the result of the trial would

have been different had his lawyers included the omitted instruction. This argument, too, fails on the prejudice prong.[4]

IV

Osman argues the prosecutor committed misconduct in three distinct ways. We address each in turn.

A

First, Osman asserts the State improperly undermined the "no duty to retreat" jury instruction by arguing during closing that Osman had alternatives to the use of deadly force. His argument is not persuasive.

Where counsel objects to alleged prosecutorial misconduct during trial, as occurred here, "the defendant bears the burden of proving that the prosecutor's conduct was both improper and prejudicial" to prevail on a prosecutorial misconduct claim. *State v. Emery*, 174 Wn.2d 741, 756, 278 P.3d 653 (2012). We review the prosecutor's conduct in the context of the whole argument, issues of the case, evidence addressed in the argument, and jury instructions. *State v. Gouley*, 19 Wn. App. 2d 185, 200, 494 P. 3d 458 (2021). It is not improper for a prosecutor to "argue that the evidence does not support the defense theory." *State v. Russell*, 125 Wn.2d 24, 87, 882 P.2d 747 (1994). To show prejudice requires that the defendant show a substantial likelihood that the misconduct affected the jury verdict. *State v. Thorgerson*, 172 Wn.2d 438, 442-43, 258 P.3d 43 (2011);

---

[4] Osman also argues the trial court erred in failing to give his proposed instruction defining "necessary." We analyze this issue solely in the context of Osman's ineffective assistance of counsel arguments because, as set forth in the text above, Osman's counsel waived this asserted error by failing to object below. *See State v. Scott*, 110 Wn.2d 682, 688 n.5, 757 P.2d 492 (1988) ("failure to define individual terms" does not constitute "manifest constitutional error" and is therefore waived if not raised in the trial court).

*State v. Ish*, 170 Wn.2d 189, 195, 241 P.3d 389 (2010); *State v. Dhaliwal*, 150 Wn.2d 559, 578, 79 P.3d 432 (2003).

Here, the jury received an instruction that there is no duty to retreat. The instructions states:

> It is lawful for a person who is in a place where that person has a right to be and who has reasonable grounds for believing that he is being attacked to stand his ground and defend against such attack by the use of lawful force. The law does not impose a duty to retreat.

Our Supreme Court has likewise held, "the jury should be instructed that the law does not require a person to retreat when he or she is assaulted in a place where he or she has a right to be." *State v. Redmond*, 150 Wash. 2d 489, 494–95, 78 P.3d 1001, 1004 (2003).

During closing, the State described the elements of justifiable homicide in self-defense asking, "Did the slayer employ such force and means as a reasonably prudent person would?" Emphasizing necessity and reasonableness, the State argued:

> [Y]ou heard me ask Mr. Osman again and again why was this necessary, was he still afraid, why was he afraid, why was this violence and brutality the only response. There were never any answers that could make sense of this because, if the fear was real, there were alternatives. You heard me ask several times about whether or not Mr. Osman locked the doors. He did not have an obligation to lock the door. It was simply checking in on his decision-making process in the light of what someone might do in similar circumstances. He never locked his front door.
>
> But it's important to consider the alternatives when judging whether such a violent action could be deemed reasonable. You have the additional instruction that indicates . . . an individual does not have the duty to retreat. This is true. This is related to stand your ground. When you find yourself in a physical confrontation you do not have the duty to run away but it is -- is that what happened here? Or was it Mr. Osman advancing at every opportunity? Does this instruction indicate that you have the right to seek out individuals and advance?

- 12 -

> Is it reasonable to advance when the two people you are afraid of are leaving? Is it reasonable to go towards them and your fear? Is it reasonable to go arm yourself in advance?
>
> Mr. Osman did not have a duty to leave that night. You heard that he was in his apartment. The women were headed to the elevator. He did not have the duty to go in any other direction, but it was an option. There was a staircase in the opposite direction from the two women. There were neighbors in the opposite direction –

Defense counsel objected, stating, "I'm going to object as to an assertion or -- an assertion that he had an opportunity to retreat because it runs contrary to the law."

The trial court responded, "The objection is noted." The State then continued:

> There were phone lines and people and help outside. He did not have a duty to leave, but you can consider that when evaluating the reasonableness of his actions in approaching and confronting and stabbing Ms. Chuol. There was a chance to go right. There was a chance to go left. At the end of all of this I am arguing that he went towards the two women because this was never about fear. He was angry.

While defense counsel did not specifically object to this further argument, the previous objection arguably carries over and the failure to repeat the prior objection is not in any event dispositive here.

The above argument does not warrant reversal. Read in the context, the prosecutor's arguments were that Osman did not have reasonable grounds for believing that he was being attacked at the time he approached the women with the knife in the hallway. And while Osman testified, "They told me their cousins were going to kill me," the prosecutor appropriately argued Osman had reasonable alternatives to remove himself from what he feared might happen in the future. Viewed in the context of the whole argument, issues of the case, evidence addressed in the argument, and jury instructions, the prosecutor permissibly argued that the evidence does not support Osman's theory of the case. *See*

*Russell*, 125 Wn.2d at 87 (quoted above). Moreover, even if Osman could establish misconduct, he cannot show a substantial likelihood that the alleged misconduct affected the jury verdict. That is because, as discussed previously, overwhelming evidence—including detailed surveillance video—supports the conviction and establishes the unavailability of self-defense as justification. Osman's prosecutorial misconduct argument on this issue therefore fails.

Osman argues that *State v. Redmond*, 150 Wn.2d 489, 495, 78 P.3d 1001 (2003), "demonstrates the impropriety of the prosecution's argument." But his reliance on *Redmond* is misplaced. The court there held that the trial court's failure to provide a no duty to retreat instruction to the jury was "reversible error." *Id.* at 495. In determining that this failure was prejudicial, the court stated that the risk that the jury might "engage in their own assessment of the defendant's opportunity to retreat" was "exacerbated by the prosecutor's statement in her closing argument that 'Bryan Johnson's back was up against the car, so if anybody had the way to get out of the situation, it was the defendant.'" *Id.* at 494 & n.3 (quoting report of proceedings). Here, in contrast, the trial court did not fail to provide a no duty to retreat instruction; the instruction was given, and we presume the jury followed it. *See State v. Gauthier*, 189 Wn. App. 30, 39, 354 P.3d 900 (2015). And rather than imply a duty to retreat, as the prosecutor did in *Redmond*, the prosecutor in this case argued Osman did not have reasonable grounds to believe he was being attacked—as the no duty to retreat instruction requires—at the time he approached Chuol and Both in the hallway. On this record, *Redmond* is inapposite.

B

Second, Osman asserts the following portion of the State's closing argument was improper:

> I want to pause for a moment and acknowledge that there were a lot of things that Ms. Chuol and Ms. Both did wrong that night. In the course of this trial I have not attempted to sugarcoat what happened or minimize what they did. They took his belongings and caused significant damage to Mr. Osman's stuff. That is very clear and something Ms. Both acknowledged over and over again in her multiple statements and on the stand. It is okay to acknowledge this. It is okay to raise an eyebrow at how they were behaving. It is okay to admit that many times throughout the evening where they made bad decisions. What is not okay is to try to pretend that their actions deserved a death sentence.

This portion of the closing argument, Osman avers, constitutes "improper vouching." We reject this argument.

"Improper vouching generally occurs (1) if the prosecutor expresses his or her personal belief as to the veracity of the witness or (2) if the prosecutor indicates that evidence not presented at trial supports the witness's testimony." *Ish*, 170 Wn.2d at 196. Significantly, Osman failed to object to the State's characterization of the victims' conduct at trial. The "failure to object to an improper remark constitutes a waiver of error unless the remark is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." *Thorgerson,* 172 Wn.2d at 443 (quoting *Russell,* 125 Wn.2d at 86). Additionally, defense counsel's failure to request a curative instruction or a mistrial for an allegedly improper remark "strongly suggests the argument did not appear [irreparably prejudicial] in the context of the trial." *State v. Negrete*, 72 Wn. App. 62, 67, 863 P.2d 137 (1993).

The theory of Osman's vouching argument is that the prosecutor "sugarcoat[ed] and minimize[d] [Chuol's and Both's] behavior multiple times during

trial" by referring to their conduct as "theft," "malicious mischief," and "property crimes" instead of referring to the conduct as "burglary" or "robbery," which are more serious offenses. The difference between these crimes does not establish improper vouching, as the prosecutor neither expressed a personal belief as to the veracity of the witnesses nor did they indicate that evidence not presented at trial supported the witnesses' testimony. Moreover, the State argued during closing that it was "okay" to acknowledge what the women "did wrong that night" and displayed images of the damage to Osman's apartment. Lastly, even if the statements were improper, they were not so "flagrant and ill intentioned" that a curative instruction could not have obviated any prejudicial effect. We reject this argument.

C

Third, Osman argues the prosecutor committed misconduct during closing argument when they displayed a PowerPoint slide showing a still-frame image of Osman after he stabbed Chuol followed immediately thereafter by another slide showing an in-life image of Chuol. Although Osman did not object to these slides at trial, he claims the prosecutor improperly appealed to passion and prejudice by "juxtaposing" these photographs during closing argument. We disagree.

Osman analogizes this case to *State v. Salas*, 1 Wn. App. 2d 931, 408 P.3d 383 (2018), also a self-defense case. There, the State showed a single PowerPoint slide juxtaposing a photo of the victim with a photo of the defendant. *Id.* at 941. The victim's photo showed him "surrounded by three people dressed in cartoon costumes" and included a caption, "Band leader, saxophone player, customer service representative." Next to this photograph was a grim image of

Salas' face resembling a mugshot and a caption reading "'Football player, fighter, outdoorsman." *Id*. *Salas* likened the photo comparison to the problematic usage of a "booking photo" that was "shown alongside a smiling picture of the victim." *Id*. at 945 (citing *State v. Walker*, 182 Wn.2d 463, 474, 341 P.3d 976 (2015)). The court concluded the juxtaposition of the photos "complete[d] and reinforce[d]" the improper message that the slain person "was a sweet, deferential person, and it would have been out of character for him to attack Salas with a knife"—thus undermining the defendant's self-defense theory. *Id.* at 946.

Salas does not support Osman's argument. Unlike *Salas*, the State's slides did not contain any pejorative captions. Unlike *Salas*, the pictures of Osman and Chuol were not on the same slide. And also unlike *Salas*, the picture of Osman was substantive evidence of Osman's state of mind during the slaying, not an unrelated photo giving an improper impression of Osman's character. Rather than using the images to convey the unlikeliness of the need for self-defense against a harmless looking victim, as in *Salas*, the prosecutor here used the image of Osman as substantive proof the slaying was motivated by rage, not fear, and thus the homicide could not be found justified by self-defense. The prosecutor's statements accompanying the picture of Osman confirm what the evidence shows: that Osman "was not terrified. He was full of rage." On this record, Osman fails to show misconduct.

Furthermore, because Osman did not object to the two PowerPoint slides at trial, he must establish that the alleged misconduct "is so flagrant and ill intentioned that it causes an enduring and resulting prejudice that could not have been neutralized by an admonition to the jury." *Thorgerson,* 172 Wn.2d at 443

(quoting *Russell,* 125 Wn.2d at 86). The jury was instructed, "You must reach your decision based on the facts proved to you and on the law given to you, not on sympathy, prejudice, or personal preference." As noted above, we presume the jury followed this instruction. *See Gauthier*, 189 Wn. App. at 39. Had Osman objected at trial, the jury also could have been instructed as to any alleged prejudice resulting from the juxtaposition of the two photos. Considering the above instruction, the context of the trial as a whole, and the overwhelming evidence of guilt, Osman cannot show prejudice requiring reversal.[5]

V

Lastly, Osman requests remand for the trial court to consider whether he is indigent and, if so, whether the victim penalty assessment should be stricken from his judgment and whether interest on restitution should be waived. The State does not oppose this request, and we grant limited remand for this purpose. *See State v. Ellis*, 27 Wn. App. 2d 1, 6, 530 P.3d 1048 (2023) (remanding to trial court to determine indigency and reconsider imposition of interest on restitution and VPA).

Feldman, J.

WE CONCUR:

Coburn, J.

, ACJ

---

[5] Osman also asserts a cumulative error argument. The cumulative error doctrine "requires reversal where a combination of . . . errors denies the defendant a fair trial." *State v. Ritchie*, 24 Wn. App. 2d 618, 644 n.9, 520 P.3d 1105 (2022). But "where the errors are few and have little or no effect on the outcome of the trial" reversal is not required. *State v. Weber*, 159 Wn.2d 252, 279, 149 P.3d 646 (2006). Because the alleged errors are at most few and had little or no effect on the outcome of trial, we conclude that Osman is not entitled to relief under the cumulative error doctrine.